ANGEL SAN MARTIN *v.* E. N. ROCK & SONS CO. ET AL.

February Term, 1934.

Present: SLACK, MOULTON, and THOMPSON, JJ., and BUTTLES and SHERMAN, Supr. JJ.

Opinion filed May 1, 1934.

*John J. Finn* for the defendants.

*C. O. Granai* for the plaintiff.

BUTTLES, Supr. J. This is an appeal from an order or award made by the commissioner of industries. The claimant on

June 28, 1932, suffered an injury by accident arising out of and in the course of his employment by the defendant, E. N. Rock & Sons Company, which caused temporary total disability for more than seven days, the exact duration of which has not as yet been determined, and also, it appears, caused the permanent loss of eighty per cent. of the vision of one eye.

The parties executed and filed a compensation agreement on July 30, 1932, in which the average weekly wage of the claimant is stated to be $19.82 and the weekly compensation rate $9.91. This rate would apply to payments for loss of vision as well as for the compensable period of total disability. Thereafter, on December 23, 1932, the commissioner made certain · findings of fact which conclude with the following order: ''It is therefore ordered that the Granite Manufacturers Mutual Indemnity Company or, in the event of its default, E. N. Rock & Sons Company pay the claimant, as additional compensation, the difference between the amount paid him at the rate of nine dollars and ninety-one cents a week and the rate of fifteen dollars per week. The rate of fifteen dollars per week shall apply both to the period during which the claimant may be entitled to compensation for temporary total disability and also the period during which compensation is payable for specific loss of function. Compensation which has accrued at the rate of fifteen dollars per week and is unpaid, shall be paid immediately.''

In this appeal the commissioner has certified three questions for review in accordance with the provisions of G. L. 5808, but they present only one issue, *viz.:* The correct interpretation of the provisions of G. L. 5790 as to computation of average weekly wages as a basis for determining the rate at which compensation is to be paid. The section of the statute above referred to, as amended by section 3 of No. 159 of the Acts of 1919, reads as follows: ''Section 5790. *Computation of wages.* Average weekly wages shall be computed in such a manner as is best calculated to give the average .weekly earnings of the workman during the twelve weeks preceding his injury; provided that where, by reason of the shortness of the time during which the workman has been in the employment, or the casual nature of the employment, or the terms of the employment, it is impracticable to compute the rate of remuneration, regard may be had to the average weekly earnings which, dur-

ing the twelve weeks previous to the injury, were being earned by a person in the same grade, employed at the same work by the employer of the injured workman, or, if such a person is not so employed, by a person in the same grade, employed in the same class of employment and in the same district. If a workman at the time of the injury is regularly employed in a higher grade of work than formerly during the twelve weeks preceding such injury and with larger regular wages, only such larger wages shall be taken into consideration in computing his average weekly wages, if during said period of twelve weeks an injured employee has been absent from his employment on account of sickness, then only such time during said period as he was able to work shall be taken into consideration in determining his average weekly wage.''

The parties agree that the weekly wages of the claimant during twelve weeks prior to injury were as indicated by the following schedule:

Week ending June 25, 2 days at $8.00 each.............$ 16.00
Week ending June 18, did not work
Week ending June 11, did not work
Week ending June 4, did not work
Week ending May 28, 2 days at $8.00 each..............  16.00
Week ending May 21, 4 days at $9.00 each.............   36.00
Week ending May 14, 4 days at $9.00 each.............   36.00
Week ending May 7, 3 days at $9.00 each..............   27.00
Week ending April 29, 3 days—4 hours, $9.00 per day...  31.50
Week ending April 23, 5 days at $9.00 each............   45.00
Week ending April 16, 3 days—3 hours, $9.00 per day...  30.35
Week ending April 9, did not work

Total   ....................  ............  ........$237.85

Referring to the weeks ending June 18, June 11, June 4, and April 9, the commissioner finds as follows: ''I find that the claimant did not work during these periods because the Rock Granite shed did not have enough work to keep all its men busy; that it was no fault of the claimant that he did not work but was due entirely to economic conditions.'' To this finding no exception was taken and the correctness of the finding is not challenged.

An examination of the workmen's compensation laws in force in other states reveals considerable diversity of provisions for determining the rate at which compensation is to be paid. In all of the states having compensation laws the compensation rate is made to depend upon wages or earnings, but the question "what wages" is variously answered. In a few states the rate of remuneration provided for by the contract of hiring is made either directly or in effect the basis of the compensation rate. In a large majority of the states the average earnings over a specified time is taken as the basis in all cases of continuous and usually of fairly continuous employment, with various special provisions for special cases. In some states time lost continuously from work if exceeding a certain period—usually one week or two weeks—is to be deducted from the employment period before dividing to obtain the average. The period for which the average is to be taken is usually twelve months. In some seven jurisdictions the period is six months, and in at least one state average wages for a reasonable time prior to injury are to be taken. We find no other law except our own in which so short a period as twelve weeks is specified. Obviously a very short period might work to the disadvantage either of the employer or the employee.

The English Act was to a large extent the parent law of all the American compensation laws, and the provision of the English Act with respect to computing wages is almost identical with our own act as it was prior to the amendment of 1919, i.e., twelve months is the period for which wages are to be averaged, and the provisions with reference to higher wages and with reference to time lost on account of sickness are not contained in the English law. The addition to our law of the amendment providing in substance that, if time has been lost on account of sickness, then only time during the period when the workman was able to work shall be taken into consideration in determining his average weekly wages, is significant. Let us consider its effect upon the question before us.

"Expressio unius est exclusio alterius." In Hackett v. Amsden, 56 Vt. 201-206, the Court quoted the above axiom from Broome, Legal Maxims, and then said: "No axiom of the law is of more general uniform application and it is never more applicable than in the construction of a statute." This axiom

precludes by inference the deduction of time lost for any cause other than sickness from the base upon which the average is to be computed. It follows that the average must be determined by dividing by twelve the total earnings of the workman during the twelve weeks prior to injury, and that no effect can be given to the fact that four of those weeks were blank weeks, unless regard may be had to the earnings of another workman during that time because either the shortness of the time during which the workman has been in the employment, or the casual nature of the employment, or the terms of the employment, render it impracticable to compute the rate of remuneration.

█ No claim is made, and none could well be made, that the employment was of a casual nature, since the claimant was engaged in his regular trade of stone cutter and in furtherance of the regular business of the employer, which was that of a manufacturer of granite products. *Chamberlain* v. *Central Vermont Railway Co.*, 100 Vt. 284, 137 Atl. 326.

█ In order to warrant resort to the wages of another employee in computing average weekly wages because of the terms of the employment, we think it must be shown, not merely that economic or other conditions differentiate this case from one occurring during normal times or during boom times, but also that such conditions applied differently or in greater degree to this claimant than to his fellow workmen at that time and place, making his average earnings for the twelve weeks an unfair measure.

In an English case, where the statute differed from ours in the respects above set forth, the Court says: ''The question is in regard to the way in which the average weekly earnings of a workman should be calculated in a case in which normally a recognized incident of his work was fourteen weeks stoppage and two weeks general holidays during the year. The object of the Act of Parliament was to compensate a workman for his incapacity to earn, which is to be measured by what he could earn under the conditions prevailing before and up to the time of the accident. If the workman takes a holiday and forfeits his wages, that does not interfere with what he can earn. It is only that for a month he did not choose to work. But if it is one of the incidents of his employment to stop for a month, then he cannot earn wages for that time in that employment and

his capacity of earning is less. I agree with the Master of the Rolls when he says: 'In my opinion the true test is this: what were his earnings in a normal week, regard being had to the known and recognized incidents of the employment. If work is discontinuous, that is an element which cannot be overlooked.' " *Anslow* v. *Cannock Chase Colliery Co., Ltd.,* (1909) A. C. 435, 78 L. J. K. B. 679, 25 T. L. R. 570, 53 Sol. J. 519, 2 B. W. C. C. 365.

Again, it is said by the English court, "But where enforced idleness is a regular incident of any employment, then the average weekly earnings during any period are to be calculated by dividing the sum actually earned by the number of weeks in the whole period." *Perry* v. *Wright* (*Cain* v. *Fred. Leyland & Co., Ltd., Bailey* v. *G. H. Kenworthy, Ltd., Gough* v. *Crawshay Brothers, Cyfartha, Ltd.*), 1 K. B. 441, 77 L. J. K. B. 236, 98 Ltd. 327, 24 T. L. R. 186, 52 Sol. J. 146, 1 B. W. C. C. 351. See, also, 6 N. C. C. A. 807, note.

There remains for consideration the question whether the shortness of the time during which the workman has been in the employment warrants giving consideration to the earnings of another workman during the four blank weeks on the claimant's schedule. The commissioner has ruled "That a workman cannot be said to be employed by a certain employer unless during the period of alleged employment he has received or is entitled to receive remuneration for his labor." If it can be said that a man was not in the employment during a week for which he received no pay, we can perceive no reason why by a parity of reasoning it could not be said that he was not in the employment during a day for which he received no pay, and an examination of the schedule discloses that the claimant must have lost at least one full day during every week that is covered thereby excepting one.

"The word (employment) is not of the technical language of the law, or of any science or pursuit, and must be construed according to the context and the approved usage of the language." 20 C. J. 1245.

We deem the ordinary meaning, and the meaning to which we should adhere, of the expression "shortness of the time during which the workman has been in the employment"

to be shortness of the time which has elapsed since he entered the employ or became an employee of this employer.

The claimant certainly was in the employment at the commencement of the twelve weeks prior to injury, and we have nothing in the record before us to indicate that he ever left that employment and ceased to be an employee of the defendant up to the time of the accident. To be sure, he was idle at one time for one week and at another time for three weeks, but it does not appear that during those times the claimant engaged in work for any other employer; nor that there was any expectation by either party that the claimant would not return to work for this employer as soon as there was work available for him. Neither does it appear that on the occasions when he resumed work any new contract of hiring was entered into. Apparently he and the employer both took it for granted that the old contract of employment was still in effect, just as they would have done if the claimant had been at work in the shed the previous day. In fact the commissioner has found that "the claimant had been in the employ of E. N. Rock & Sons Company for two years or more and was regarded as a regular employee of this firm."

█ We hold that under the facts found the average weekly wages must be determined by dividing the total amount earned by claimant during the twelve weeks period by twelve, which gives $19.82 as the average weekly wages and $9.91 as the rate at which compensation is payable. The above holding makes it unnecessary to consider the other questions certified by the commissioner of industries.

█ █ We call attention to what is said in *Larrabee* v. *Citizens Telephone Co.*, 106 Vt. 44, 169 Atl. 784, about bringing cases to this Court piecemeal. So far as appears, the period of temporary total disability ended before the appeal was certified to this Court. If so, the date when such disability ended should have been determined, and for failure to do so we would dismiss the proceedings had the appeal not been taken before the Larrabee Case was published. We will not entertain appeals unless all questions which it is possible to determine below have been there determined.

*The order of the commissioner of industries is vacated and set aside, and case remanded to the commissioner of industries in order that a new order may be made in accordance with the views herein expressed.*