## REGINA NYBERG v. LITTLE FALLS BLACK GRANITE COMPANY AND ANOTHER.[1]

February 4, 1938.

No. 31,347.

See 192 Minn. 404, 256 N. W. 732.

*Sweet, Johnson & Sands* and *Roy J. Brumfield,* for relators.
*Frederick J. Miller* and *Leonard L. Sumner,* for respondent.

HILTON, JUSTICE.

*Certiorari* to review an award of compensation to Regina Nyberg, widow and sole dependent of Olof Nyberg.

[1]Reported in 277 N. W. 536.

A somewhat elaborate statement of facts is necessary. November 16, 1926, Nyberg, then 53 years old, was working in one of relator's quarries and on that day was on the ground in the quarry holding a bull set, which is a tool used in cutting and trimming stone. It has a metal head with a chisel edge on one end and a pounding surface on the other. Attached to this head is a handle for holding the tool. Nyberg was in a squatting position, holding the handle of the bull set in both hands, with his left elbow resting on his left leg somewhere near the knee. His son was pounding the bull set with a sledge hammer, and as he struck it the blow jarred the handle and jerked Nyberg's left elbow causing a stinging sensation in his left knee. He threw down the tool, rubbed his knee for a few moments, and then returned to work. He felt some pain and a rather numb feeling for the balance of the day and the following few days, but continued at his work. However, about four or five days after the incident his knee began to swell and become discolored, and the pain became more intense. He went to see a Dr. Hall, who diagnosed the condition as water on the knee and suggested operating. Nyberg wished to avoid an operation if possible, so hot water applications and an iodine treatment were prescribed. This treatment was not successful, and December 16, 1926, he was operated on by Dr. Hall, who then diagnosed the leg condition as an acute stage of traumatic bursitis. He was discharged from the hospital about a week later, but testified that his knee was large and swollen for some time thereafter, and he could not notice much improvement.

Nyberg returned to work for the relator March 1, 1927, but quit again within a week. Thereafter he worked for short intervals for various granite, or stone companies until March, 1930. He did not work again after that time. During the period from March, 1927, to March, 1930, his knee was swollen and sore and became progressively worse. The pain, discomfort, and inconvenience increased until he was no longer able to stand on his leg. During all this time he consulted several doctors, one of them diagnosing the knee ailment as a low-grade inflammatory condition in the joint.

Nyberg continued to have trouble with the leg. Early in 1933 X-rays revealed a definite destruction of the knee joint and cartilage

and a bulge, which was a cold abscess, in the popliteal space. This abscess broke in March, 1933. A sputum test made April 4, 1933, was positive for pulmonary tuberculosis. X-rays taken shortly thereafter revealed an advanced stage of pulmonary tuberculosis and also the existence of a tubercular left knee. The left leg was amputated above the knee in August, 1933, following which Nyberg was removed to the state tuberculosis sanitarium at Walker, Minnesota. He remained there until his death March 15, 1935. The primary cause of death was pulmonary tuberculosis.

Deceased claimed compensation shortly after the accident and injury in 1926. He was paid $140 for seven weeks' compensation, and also received his medical and hospital expenses incurred during that period. These were the only payments made to him. Thereafter he demanded additional compensation and medical benefits, but after investigation relator filed a denial of liability with the industrial commission. November 7, 1932, Nyberg commenced the instant proceedings before the commission, and the matter was referred to a referee. Upon stipulated facts, relator moved for a dismissal on the ground that the proceedings were not instituted within two years after filing of the report of injury by the relator with the commission. The denial of this motion was ultimately affirmed upon *certiorari* from this court. Nyberg v. Little Falls Black Granite Co. 192 Minn. 404, 256 N. W. 732.

Thereafter the matter was again referred to a referee. The hearings were adjourned from time to time and extended over a period of about a year. Upon Nyberg's death, his widow, respondent herein, moved to be substituted in his place as petitioner and asked for permission to litigate her dependency claim in these proceedings, in addition to the claim of her husband for compensation and other benefits to which he was entitled during his life. This motion was granted over relator's objections. After the conclusion of the hearings, the referee made findings in favor of the respondent and awarded the compensation found owing to Nyberg during his lifetime, dependency benefits, and medical and funeral expenses. These findings were adopted by the commission, one commissioner dis-

senting, and *certiorari* was thereupon issued from this court to review the award.

The first question raised relates to the sufficiency of the evidence to sustain a finding of causal relationship between the accident November 16, 1926, and the subsequently diagnosed tuberculosis of the left knee. Eleven medical experts testified in the proceedings below. Those testifying on behalf of the petitioner stated that in their opinion there was a definite and direct connection between the trauma and the tubercular knee. It was their opinion that a dormant or arrested tubercular condition existed in Nyberg's knee at the time of the accident, which was aggravated or excited into an active state as the result thereof. It is conceded that if this is what occurred the resulting disability is compensable.

It appears that joint tuberculosis is a secondary infection to pulmonary tuberculosis. There is evidence that the area directly under the place where Nyberg injured his knee is a likely and fertile ground for dormant tuberculosis germs. All experts testifying in the case agreed that a dormant tubercular condition could exist in the knee and that a slight trauma could aggravate or light it up into activity. Those testifying on behalf of the relator conceded that this may have happened in Nyberg's case. However, they were of the opinion that the existence of the tubercular condition in the injured knee was mere coincidence and not the result of any causal relationship between the injury and the tuberculosis, while the experts testifying for petitioner were of the opposing opinion, already stated.

The tuberculosis in the knee was not diagnosed until 1933. If the inference therefrom was that the tuberculosis did not develop until shortly prior to its diagnosis, petitioner's case would be materially weakened, perhaps to the point of defeating her claim to compensation. However, the evidence almost conclusively establishes that the tuberculosis in the knee became active shortly after the accident, although it was not correctly diagnosed until several years later. Many medical experts expressed an opinion that such was the case. One medical witness testified that the knee X-rays could have easily been misinterpreted, even in the late stages of

tuberculosis, and that the symptoms revealed thereby might appear to be arthritis. Another, testifying for the relator, stated that in 1928 he diagnosed Nyberg's knee condition as a low-grade inflammatory reaction. However, he admitted that this could indicate a tubercular condition, and also stated that in his opinion an X-ray taken of the knee in 1928 undoubtedly disclosed a tubercular condition, and that this condition was consistent with tuberculosis of two years' standing. A Dr. Wynne, testifying for relator, frankly admitted that he erroneously diagnosed Nyberg's knee condition in 1928 as a low-grade infectious arthritis, and that deceased then had a tubercular infection in the knee which was consistent with the starting of the disease about the time of the accident. This witness also stated that it was difficult to make a correct diagnosis in such cases and distinguish a tubercular infection from other types of infection. There is additional evidence that the development of tuberculosis and the appearance of clinical symptoms, after a traumatic aggravation of a latent tubercular condition, with respect to time, varies with the individual and depends to a large extent on his general resistance and the virility of the germs. It appears that such development in some cases is very prompt and rapid, and in others very slow, extending over a period of months or years. All this evidence leads to the inference that the tubercular infection in the knee became active about the time of the injury and further explains the failure of doctors examining Nyberg after the accident to make a diagnosis of knee tuberculosis for such an extended period thereafter.

The fact that an active case of tuberculosis did develop at the point of injury within a short period of time is of some significance in determining the question of causal relationship, particularly in view of the active life led by deceased prior to the injury, and the fact that he had never been troubled by the knee before that time. See Austin v. Red Wing Sewer Pipe Co. 163 Minn. 397, 204 N. W. 323; Reynolds v. Cities Service Oil Co. 199 Minn. 25, 270 N. W. 912.

Not to be overlooked in the instant case is the additional fact that from the time of the injury until the tuberculosis was finally diagnosed several years later there is an undisputed history of a

serious knee condition which became progressively worse. There is an unbroken sequence of additional symptoms manifesting themselves throughout this period, and when they are considered in the light of subsequent developments also lend strong support to the conclusion that the infection became active at the time of or shortly after the injury and had a direct connection therewith. This is not a case where there has been an injury and an apparent complete recovery, with a serious disease or condition appearing at a future time. The proof of a causal relationship between the original injury and subsequent condition in such a case may naturally be more difficult and perhaps necessarily speculative. Our conclusion is that the finding of causal relationship between the injury and knee tuberculosis is sustained by competent evidence.

Causal relationship between the injury and tubercular knee being established, we are also satisfied that the finding of proximate cause between such injury and Nyberg's death must stand. As already stated, both sides agree that joint tuberculosis is a secondary infection to pulmonary tuberculosis, so evidence establishing the existence of a dormant tubercular knee infection at the time of injury also proves that he had a pulmonary infection prior to that time. There is considerable evidence that the latter was also in an arrested or dormant state at the time of the accident. There is evidence that a person having such a dormant infection has a normal life expectancy unless something occurs to excite or arouse the infection into activity, and that the cause of this lighting up in the instant case is traceable to, or connected with, the active tubercular infection which developed in the knee. Several medical witnesses testified that in their opinion Nyberg's death from pulmonary tuberculosis was directly traceable to the injury and subsequent knee infection. They testified that the knee infection excited the pulmonary tuberculosis, either by lowering Nyberg's resistance or by releasing bacilli and toxins through the abscess into his blood stream. Relator's experts conceded that these theories are tenable and very possible. Dr. Mariette, who has specialized in tuberculosis for 21 years as superintendent of the tuberculosis sanitarium at Glen Lake, Minnesota, had a very definite opinion that there was

a causal connection between the knee infection and pulmonary tuberculosis. Dr. Burns, superintendent of the state sanitarium at Walker, was of the same view. The bases of these opinions were fully revealed. We do not agree that they were all speculation and conjecture. We are satisfied that there was sufficient positive expression of opinion by respondent's witnesses to raise a fact issue. Causal connection between the knee infection and the lighting up of a dormant pulmonary condition is not unreasonable in the light of all the evidence and the history of Nyberg's case. The evidence justified the conclusion that the tubercular knee aroused latent germs of the disease in Nyberg's lungs and thereby caused his death. Responsibility for this cause rests on the relator.

Needless to say, we have stated the evidence in a light most favorable to the petitioner. In Honer v. Nicholson, 198 Minn. 55, 268 N. W. 852, 854, cited by relator, the decision is summarized in the opinion as follows (198 Minn. 59):

"The whole point is that here, under established law, the medical testimony cannot properly be given the effect of creating a fact issue. On its face it is but conjecture, and affirmative decisions cannot stand on such unsupported speculation even though it is a professional emanation."

As already pointed out, all of the medical testimony in the instant case can hardly be termed "unsupported speculation." Other cases cited by relator turned on the same conclusion that the evidence adduced to prove proximate cause was mere speculation and conjecture. Each case must necessarily depend on its own facts and evidence, and we deem it unnecessary to discuss in detail those cited by relator.

Relator also contends that respondent's dependency claim is barred by the limitation provisions of the workmen's compensation act. The question involves an interpretation of 1 Mason Minn. St. 1927, § 4282, which, as far as it is here pertinent, provides:

"The time within which the following acts shall be performed under part 2 of this act shall be limited to the following periods, respectively:

"(1) Actions or proceedings by an injured employe to determine or recover compensation; two years after the employer has made written report of the injury to the Industrial Commission but not to exceed six years from the date of the accident.

"(2) Actions or proceedings by dependents to determine or recover compensation two years after the receipt by the Industrial Commission of notice in writing of death given by the employer but not to exceed six years from the date of the accident;  *  *  *"

We need not state the various arguments advanced by relator to sustain its position on this point, because we are of the view that the act contemplates only one proceeding to determine and enforce the various rights arising from each casualty compensable under its provisions, and the commencement of that proceeding by the employe tolls the limitation provision respecting proceedings by the dependents. Proceedings by the latter after the employe's death, to determine and enforce their rights arising from the same casualty, are not new, separate, and distinct proceedings, but are merely a reopening or continuation of the proceedings originally commenced by the employe.

The right of the employe to compensation arises at the time of injury and belongs to him alone. The right of the dependents to compensation arises at the time of the employe's death and is a separate and distinct right belonging to them. State ex rel. Carlson v. District Court, 131 Minn. 96, 154 N. W. 661. The employe, during his lifetime, cannot deprive his dependents of their rights by a settlement made with the employer. Lewis v. Connolly Contracting Co. 196 Minn. 108, 264 N. W. 581. Thus the act has created two distinct rights, one in the employe and the other in his dependents.

There is, however, a distinction between the *existence* of these rights and *proceedings* to enforce them. The purpose of the act was not only the creation of rights, but also to provide for their speedy and inexpensive determination and enforcement. The importance of avoiding the delay and expense of normal litigation was realized. This accounts for the creation of a procedure applicable only to proceedings under the act, and for the provision of an ad-

ministrative body with broad powers necessary to effectuate its purposes. To hold that it contemplates separate proceedings by the employe and his dependents would be so contrary to these purposes that such a result is not to be reached unless it was clearly intended. A requirement of so needless a procedure as the commencement of separate proceedings by dependents, with the resulting additional inconvenience, delay, and expense, and the relitigation of matters already settled between the employer and employe would be hard to justify. Furthermore, matters such as the requirement of § 4274(f), that compensation paid to the employe be deducted from that due his dependents, may be more easily accomplished in one proceeding. The same is true of the various administrative details. When injury and death result to a workman in the course of his employment, the two compensable conditions, injury and death, arise out of the same casualty, and the rights to compensation arising therefrom should be determined in one proceeding. While those rights may exist independent of each other and accrue to different parties, those of the dependents are nevertheless derivative from those of the employe.

Section 4282 imposes two limitations on proceedings by the employe, and two on proceedings by his dependents. (There is also a provision, not of importance here, extending the specified limitation periods in certain exceptional cases.) As to proceedings by either the employe or his dependents, the employer is given the opportunity to reduce the limitation period to two years by giving notice to the industrial commission of the injury or death as the case may be. In addition to these limitations, and independent of the giving of notice by the employer, there is also imposed a limitation period of six years following the accident on proceedings by either the employe or his dependents, the thought undoubtedly being that the employer should not, in the normal case, be required to defend against a claim of which he has had no notice within that time. The six-year limitation on proceedings by dependents commences to run from the time of the accident and not from the time of death, which is when their rights arise, because, if the employer has no notice of the employe's claim, he has no notice that a claim

may arise in his dependents. In such a case, the reasons for protecting the employer against the claim of the employe apply with equal force to the claims of his dependents arising from the same casualty. But when the employer has notice of the employe's claim, he also has notice that claims of the dependents will arise if the injury results in death. The purpose of the six-year limitation on proceedings by dependents was not, as relator claims, to arbitrarily prevent their claims from arising in all cases where death results more than six years after the accident, but was for the purpose of assuring the employer of an opportunity, in all cases, seasonably to make the necessary investigation when the matter is still fresh in the minds of witnesses and to protect him against the burden of defending stale, and perhaps unfounded, claims. The commencement of proceedings by the employe is notice that a claim is being made and, if it is valid, that a claim will also exist in favor of the dependents in the event death results from the injury. Notice that the accident is claimed to be of a compensable nature, which the employer receives when the employe acts within the required time, is all the protection which the six-year limitation provisions intended to give, and to which he is entitled.

For the reasons stated, our conclusion is that the workmen's compensation act contemplates only one proceeding for each casualty, and the provision of § 4282 relating to proceedings by dependents was intended to apply only in cases where the employe did not commence a proceeding to determine and recover his compensation during his lifetime. What has been said disposes of relator's contention that respondent's dependency claim was barred and also that it was error to permit her to litigate her dependency claim in the proceedings commenced by Nyberg.

Respondent is allowed $100 attorney's fee, plus statutory costs and taxable disbursements.

Affirmed.