ELSIE J. LAIRD v. STATE OF VERMONT HIGHWAY DEPT. AND
THE TRAVELERS INSURANCE COMPANY.

February Term, 1941.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and
JEFFORDS, JJ.

Opinion filed June 12, 1941.

70

*George R. McKee* and *J. Boone Wilson* for plaintiff.

*George L. Hunt* for defendants.

JEFFORDS, J. On January 2, 1938, Willis J. Laird who was employed by the named defendant as watchman at the state garage was found lying in the snow near the open main gate of the premises. He was in a comatose state, was paralyzed on his right side, and his condition was a result of a cerebral hemorrhage. He was totally disabled from this time until his death which occurred in August, 1938.

Laird entered a claim for compensation under the Workmen's Compensation Act, P. L. ch. 264. A hearing was had on this claim and an award made in favor of the claimant in May, 1938. The defendants appealed to this Court from the award. While the appeal was pending the claimant died. It was held that there was no legal evidence in the case connecting the claimant's injury in any way with his employment and the order of the commissioner awarding compensation was annulled and set aside.

See *Laird* v. *State of Vermont Highway Dept. et al.*, 110 Vt. 195, 3 Atl. 2d. 552, for a more complete statement of the facts and holdings in that case.

After the above decision was handed down the present claimant, as widow and sole dependent of Willis, filed her claim for compensation under P. L. 6513 as amended by sec. 1 of No. 172 of the Acts of 1937. Hearings were had by the commissioner over the objections of the defendants which were to the effect that the decision in the Willis Laird case was conclusive as to this claimant and estopped her from further prosecution of her claim. The commissioner from the evidence introduced at the hearings made findings of fact and conclusions therefrom favorable to the claimant but as a result of various conclusions of law set forth in the printed case he held that the rights of defendants to benefits under the act are derivative and stand on no higher ground than those of the injured employee and upon the grounds above referred to in defendants' objections denied compensation and dismissed the claim.

The claimant appealed from the ruling of the commissioner and on this appeal various questions of law were certified for determination. Although stated in different ways they all come down to the ultimate question of whether the decision in the Willis Laird case is a bar to the proceedings brought by the present claimant.

The defendants appealed from the ruling and determination of the commissioner in so far as it included his findings of fact and conclusions of law thereon. Such appeal, it was stated, is to be considered only in the event that the claimant appealed from the ruling adverse to her. On the defendants' appeal the following questions were certified:

> "1. That an award denying compensation and dismissing said claim, having been made, whether the commissioner has or has not, as defendants claim, the authority or duty to find facts and determine conclusions of law thereon.
> 2. Whether the following findings of fact and holdings of the commissioner are or are not, as defendants claim, legally supported by the evidence:
> (a) '17. Laird's exertion, in the performance of his work and shoveling, elevated his blood

pressure and was the precipitating or aggravating cause of his cerebral hemorrhage which later resulted in his death.

(b) I find and so hold that claimant's decedent received a personal injury by accident arising out of and in the course of his employment on January 2, 1938.'

3. Whether the findings and holdings of the commissioner, above in paragraph 2 (b) set forth, are or are not, as defendants claim, legally warranted (1) by the facts found, or (2) by any facts legally supported by the evidence.

4. Whether at the hearing the commissioner did not or did, as defendants claim, commit error in the admission of evidence offered by claimant and in the exclusion of evidence offered by defendants, as shown by the transcript thereof.''

Claimant's appeal which we will first consider, presents a matter of first impression to this Court. The cases from other jurisdictions where similar questions on like facts have been considered are not numerous and the conclusions reached are conflicting. That such conflict exists is natural as the result in each case must depend upon the construction of statutes varying often in their phraseology. Consequently the value of such decisions is quite limited. *Fitch* v. *Parks & Woolson Machine Co. et al.*, 109 Vt. 92, 97, 191 Atl. 920.

The defendants in support of their contention that the claimant's rights are wholly derived from, and not independent of, those of her late husband cite: *Ek* v. *Dept. of Labor & Indus.*, 181 Wash. 91, 41 Pac. 2d. 1097; *Nyberg* v. *Little Falls Black Granite Co.*, 202 Minn. 86, 277 N. W. 536; *Biederzycki* v. *Farrel Foundry & Mach. Co.*, 103 Conn. 701, 131 Atl. 739, and *Hughes* v. *Elliott*, 162 Tenn. 188, 35 S. W. 2d. 387. In addition to these cases, *Lewin Metals Corp.* v. *Ind. Com.*, 360 Ill. 371, 196 N. E. 482 has come to our attention.

In the first of the above cases it appears that one Charles Ek filed a claim for compensation which after hearing was denied on the ground that there was insufficient evidence that he had suffered an accident or injury as claimed. Ek did not appeal from this decision. After his death his widow as claimant in the case

under discussion filed her claim for a widow's pension under the Washington act. Her claim was rejected below on grounds which would have barred Ek from recovery and for the additional reason that she did not file her claim within the required time. She appealed and the Supreme Court without discussing the reasons for denial below, although referring to them, affirmed the judgment on a ground apparently not before considered in the case. It was held that the judgment of the department in Charles' case when the time for appeal expired became a complete and final adjudication not only upon Charles but also upon all persons who claimed through or under him and that the present claimant did so claim. No discussion of the Washington statute is had nor cases cited in support of the holding that the widow's right to compensation was derived from her late husband. The only case referred to was *Beels* v. *Dept. of Labor & Ind.*, 178 Wash. 301, 34 Pac. 2d. 917, from that jurisdiction. In that case it was stated that a widow's claim to a pension was based on a new, original right arising from the death of the husband and a decision favorable to the claimant widow therein was rendered. In the *Ek* case it was stated that the *Beels* case was not in point because in the latter there was no adjudication binding on the claimant therein. It is questionable whether the holding in the *Ek* case to the effect that a dependent's rights to compensation are derivative is to be considered the present law on that point in that state in view of what is said in two later decisions from the Supreme Court of Washington. See *McFarland* v. *Dept. of Labor & Ind.*, 188 Wash. 357, 62 Pac. 2d. 714, and *Miller* v. *same*, 1 Wash. 2d. 178, 96 Pac. 2d. 579.

In the *Nyberg* case a claim had been made and before hearing on it had been concluded claimant died. His widow on motion was substituted as claimant. The defendant contended, in effect, that the widow's rights to compensation were entirely independent of those of her deceased husband and that because of lapse of time her claim was barred by the statute of limitations. It is stated in the opinion on the authority of previous cases from that jurisdiction that the act created two distinct rights, one in the employee and the other in his dependents. The Court makes a distinction between the existence of these rights and proceedings to enforce them. It was held that the proceedings by the dependent were not contemplated by the act to be separate from

the former but were merely a continuation and reopening of the same. The result of this decision and those later from that jurisdiction apparently is a holding to the effect that while the rights exist independent of each other and accrue to different parties those of the dependents are derived from those of the employee in the sense, at least, that the claim of the dependents is but a continuation of the earlier claim by the deceased workman. It would seem to follow that any rulings or findings made in the cases of deceased employees would be binding and conclusive on those points as to dependents in 'their cases although some language used in *Susnick* v. *Oliver Iron Mining Co.*, 205 Minn. 325, 286 N. W. 249, might indicate a different conclusion. See, also, *Johnson* v. *Pillsbury Flour Mill Co.*, 203 Minn. 347, 281 N. W. 290, for another case from that jurisdiction adhering to the rule laid down in the *Nyberg* case.

In the *Biederzyski* case from Connecticut the question was whether the claimant as a dependent widow would be required to prove *de novo* certain facts previously found in favor of her deceased husband in an award to him. The defendants based their claim that she should be so required on the ground that her claim was separate and distinct from that of her late husband. The Court, basing its decision apparently on the section of the Connecticut act providing for the modification of awards as construed in a former opinion of the Court, rejected defendants' contention. It construed another case from that jurisdiction, *Jackson* v. *Berlin Const. Co.*, 93 Conn. 155, 105 Atl. 326, relied upon by the defendants, as holding, not that the claims are separate and distinct, but rather that the classes of compensation awarded the employee and his dependents are separate and independent of each other. It stated that each arises out of the same compensable injury. It held that the facts found in the employee's case must be accepted as those found in the dependent's case so that all she needed to prove in addition is death of the employee, her status as a dependent and causal connection between the death and the injury. It is rather difficult to reconcile this opinion with that in the *Jackson* case and to draw the distinction made between rights to, and classes of, compensation. It would seem that the result here reached was the same as in the *Nyberg* case, i. e. that the dependent's claim is merely a continuation of that of the deceased workman.

■ The case of *Hughes* v. *Elliott* holding that dependents stand on no higher ground than the injured employee is not in point as there had been no previous claim by the deceased workman. The question before us is not whether the rights of dependents are higher or lower than those of the deceased but whether they are independent of, or derived from, his rights.

It is apparent that the decision in the *Lewin Metals* case from Illinois resulted from the statute in that state which provided that a final decision in the employee's case shall be taken as final adjudication in the case of his dependents as to any of the issues which are the same in both proceedings.

*DeGray* v. *Miller Bros. Construction Co. Inc. et al.*, 106 Vt. 259, 173 Atl. 556, has also come to our attention. At page 273 the following paragraph appears in the opinion:

> "Since the claimant has only the same rights to compensation under the Vermont act that the decedent had (G. L. 5758, Subd. II, 5763, 5774), the question raised by this ruling is, if the decedent, before his death, had applied for compensation under the Vermont act, would the commissioner have had jurisdiction to award such compensation to him."

The words in the first part of this paragraph taken alone would indicate that this case supports the position taken by the defendants but a study of the whole opinion shows there was no occasion for, nor intention to, make a holding therein applicable to the question here under discussion.

It appears the husband of the claimant was hired in Connecticut and met his death while working in Vermont. His widow filed her claim in Connecticut under the Workmen's Compensation Act of that State and received a favorable award against the employer who there in turn brought action against the two insurance carriers which action was determined adversely to the employer. The widow then brought a petition before the Vermont commissioner of industries against the employer and one of the insurance carriers which was really an action by the employer against the carrier. The ruling referred to in the above quoted paragraph was, in effect, that having brought her claim in the first instance under the Connecticut act the claimant was

thus barred from now proceeding under our act. This ruling was affirmed on the ground of election and estoppel.

It is apparent that the situation there presented was entirely different from the one here. DeGray before his death had taken no action which could be claimed had affected in any way the rights of his widow to compensation and consequently no question was there presented as to whether such rights were derived from, or independent of, those of the deceased husband.

It is plain that the Court only meant that the rights of both under the Vermont act are the same in the sense that the rights of each must come within and be governed by the terms of that act. Nothing more can properly be inferred from this paragraph in the opinion. This conclusion is borne out by the authorities cited in support of the first statement in the paragraph. G. L. 5758, subd. II, now P. L. 6485, subd. II, contains definitions of certain words and phrases used in the act. The only part of this section at all pertinent states that: "Any reference to a workman who has been injured shall, where the workman is dead, include a reference to his dependents as herein defined, if the context requires." G. L. 5763, now P. L. 6498, provides, as far as here material, that when an employee has elected by agreement to come under the act such agreement shall be a surrender by him of his rights to any compensation other than provided by the act and this agreement shall bind him, his widow and other dependents. G. L. 5774, now P. L. 6509, is hereafter discussed.

Later on in this opinion we recognize that there is a common factual ground between the rights of the employee and his dependent widow in that the evidence in the dependent's case must show a compensable injury to the employee in order to entitle her to recover. The common ground in the *DeGray* case upon which the jurisdictional question turned was one of law involving statutory construction rather than facts. That is the only distinction relating to the question we are now considering between the holdings in that case and the conclusions hereinafter set forth in the present opinion.

The claimant cites cases from many jurisdictions as supporting her contention that her rights are not derived from those of her deceased husband but come to her from the statute. Among such cases the one nearest in point is *Harper* v. *Dick, Kerr & Co.*,

90 L. J. (K. B.) 1313, 124 L. T. R. (N.S.) 438, 13 B. W. C. C. 250, decided in 1920. It appeared in that case that a workman made a claim for compensation which was denied on the ground that he had failed to show that the accident arose out of and in the course of the employment. The workman died after taking an appeal which was abandoned and his widow brought proceedings which it is to be drawn from one report of the case were "fresh proceedings on her own account," 13 B. W. C. C. at 251. Her claim was dismissed on the ground that the question of fact as to the cause of the accident had been settled. The widow appealed and the decision of the lower court was reversed. The Court said apparently the trial judge had held that the adjudication in the employee's case was *res judicata* as to the present claim. This conclusion was considered erroneous and it was held that the dependents of a deceased workman have a direct, separate right to institute proceedings given them by certain designated sections of the British Compensation Act. The main opinion in the case concludes as follows:

> "That being so, I do not see how you can find *res judicata* when the previous litigation was between different parties or how you can have estoppel against one of those parties because of a decision in proceedings to which they were not a party. It is like the case of two actions by strangers which involved decision of the same question. A finding in one would not make the other *res judicata* at all."

It is apparent from a reading of the opinion that the decision in the above case was based largely if not wholly on *Tucker* v. *Oldbury Urban Dist. Council,* (1912) L. R. 2 K. B. 317, 5 B. W. C. C. 296, decided in 1912. Here a claim was made by the dependents of a deceased workman, no claim having been made by him in the matter. The defendant attempted to introduce in evidence as an admission a statement made by the workman which would indicate that the cause of his death was not from any injury arising out of or in the course of his employment. This evidence was excluded and it was held on appeal that the ruling below was correct. It was stated in the opinion that the claimants as dependents have a direct statutory right against the employer; that the deceased workman is not a party

to the litigation nor do the claimants derive their title to compensation by derivation from him and consequently no admission made by him could be evidence against the present applicants.

For other English cases holding the same as the above two as to the rights of dependents see, *Williams* v. *Vauxhall Colliery Co. Ltd.*, (1907) L. R. 2 K. B. 433, 9 W. C. C. 120; *Howell* v. *Bradford & Co.*, (1911) 104 L. T. R. 433, 4 B. W. C. C. 203; *Manton* v. *Cantwell*, (1920) L. R. A. C. 781, 13 B. W. C. C. 55.

Turning to the cases from the various states it was held in *Curtis* v. *Slater Cons. Co.*, 202 Mich. 673, 168 N. W. 958, that a dependent widow was barred from presenting her claim because not made within six months of the death of her husband as required by the statute. The decision is based in part on the construction of a certain section of the act but aside from that it is stated that whether the husband's death immediately followed the accident, or he lived to institute proceedings, the dependent's claim based on a new, original right arising from his death was the same.

In *State ex rel. Carlson* v. *Dist. Court*, 131 Minn. 96, 154 N. W. 661, it appeared that the injured employee died soon after and from the effects of the accident. Between the time of his injury and death the Workmen's Compensation Act was amended. The amendments being favorable to the dependent claimant she sought to recover under the law in force on the day of death. The employer claimed that the law in force on the day of injury should govern. The contention of the dependent was sustained, the Court saying in the course of its opinion: ''The claim of the plaintiff for compensation does not arise from the injury to her husband, but is a new and distinct right of action created by his death.'' It should be noted that this case is referred to as authority for substantially the above statement in the *Nyberg* case but its value as support for the present claimant's contention may very well be weakened as a result of the other holdings in the latter case herein before discussed.

In practically every case that has come to our attention where the question has arisen as to the effect of a release given, or a lump sum settlement received, on the rights of dependents it has been held that the action of the employee in one or both of these respects did not bar his dependents from their rights to compen-

sation. Although the facts therein presented are different from the ones here, these cases cannot be disregarded in the determination of our question. In deciding in favor of the dependents the language used is very significant. It is stated in one way or another in these cases that the rights of the dependents are not derived from the deceased employee but are separate, distinct and independent from his and come directly to the dependents from the statute. For illustrative cases of this kind see: *In re Cripp,* 216 Mass. 586, 104 N. E. 565; *Milwaukee Coke & Gas Co.* v. *Ind. Com.,* 160 Wis. 247, 151 N. W. 245; *Smith* v. *Kiel,* (Mo. App.) 115 S. W. 2d. 38; *Maryland Cas. Co.* v. *Stevens,* (Tex. Civ. App.), 55 S. W. 2d. 149; *Routh* v. *List & W. Cons. Co.,* 124 Kan. 222, 257 Pac. 721; *Kay* v. *Hillside Mines, Inc.,* 54 Ariz. 36, 91 Pac. 2d. 867. See also *Mich. C. R. Co.* v. *Vreeland,* 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. 417 and Schneider on Workmen's Compensation, sec. 379.

P. L. 6513 as far as here material reads as follows:

> "If death results from the injury within two years, the employer or the insurance carrier shall pay to the persons entitled to compensation or, if there are none, then to the personal representative of the deceased employee, burial expenses not to exceed one hundred dollars; and shall also pay to or for the following persons * * *"

Then follow different classes of dependents and percentages as to each.

Our original Compensation Act was enacted in 1915. It had indirectly for its basis the earlier British Workmen's Compensation Act. *Bousquet* v. *Howe Scale Co. et al.,* 96 Vt. 364, 368, 120 Atl. 171; *Giguere* v. *Whiting Co. et al.,* 107 Vt. 151, 157, 177 Atl. 313. Thus for the reasons stated in the *Giguere* case we consider as important in the interpretation of our act the English cases decided before passage of the same which construed similar sections of their act. The *Tucker* case and two other English cases, *supra,* come within this category.

It would serve no good purpose to discuss further the cases *supra* relied upon by the defendants or attempt ascertainment, other than before indicated, as to whether their holdings were required by a construction of the various statutes involved.

In our opinion the English cases and the other cases *supra* holding that the rights of dependents to compensation are not derived from those of the deceased employee but are independent and separate rights coming to them from the statute states the correct rule to be applied in construing P. L. 6513 in the situation here presented. It is true, as stated in some of the cases, that there is a common factual ground to some extent for the rights of each but they are not identical as a dependent must prove more to recover than is required of the employee. The employee's rights are based entirely on the injury and spring into being as soon as it is received. The compensation for loss resulting from such injury belongs to the employee and to him only. It is also true that there would be no occasion for a dependent to claim compensation unless the deceased employee had received a compensable injury. But the rights of the dependent to compensation do not accrue unless and until death results from such injury and such rights are then given to him by the statute not because of the injury but because of the resulting death and the financial loss to the dependent therefrom.

The defendants rely on P. L. 6518 which reads as follows:

> "In case death resulting from the injury occurs after a period of disability, either total or partial, the period of disability shall be deducted from the total periods of compensation respectively stated in section 6515."

They say that this section clearly shows that the benefits provided by the statute are entire and not subject of several distinct rights. It should be noted that in the *Milwaukee Coke* case from Wisconsin and in the *Routh* case from Kansas, *supra,* the Courts held that similar deduction statutes evidenced the opposite intention from that claimed by the defendants here. To our minds this section has little or no bearing on the question. The obvious purpose of it is simply to allow the employer or the insurance carrier to deduct from the compensation periods which are provided by the act for dependents any disability compensation periods therein provided for the injured employee so that the total of both such periods shall not exceed the total period set forth in sec. 6515 to the dependent in question.

The defendants lay particular stress on P. L. 6509 which is as follows:

> "The rights and remedies granted by the provisions of this chapter to an employee on account of a personal injury for which he is entitled to compensation under the provisions of this chapter shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise on account of such injury."

The defendants argue that by this statute it is the rights and remedies granted "to an employee" that exclude all other rights and remedies, not only of himself, but also of his dependents. They say that it necessarily follows that a dependent has no right or remedy under the act except such as are referable to, and derived from, the employee's rights and remedies. Otherwise, they say, if the dependent enjoys an independent and distinct right to compensation, then such dependent is not within the exclusory provisions of the statute and may take compensation as a dependent widow and also enforce any other rights or remedies she may have "at common law or otherwise on account of such injury."

We cannot agree with the defendants in their construction of this statute. The purpose of sec. 6509 was to bar an employee who elected to take compensation, and the other named persons, from the "other rights and remedies." By sec. 6511, which must be read in connection with 6509, if the injury is one creating liability in a person other than the employer the employee can elect to take an award of compensation or to proceed against the third person but he can not have the benefit of both remedies. *Davis* v. *C. V. Ry. Co.*, 95 Vt. 180, 113 Atl. 539. So it would seem, without so deciding, that this claimant by electing to take compensation under the act would be barred from any other right or remedy against the employer or third persons under the so-called death statutes or otherwise. *McCreary* v. *Nashville, C. & St. L. Ry., et al.*, 161 Tenn. 691, 34 S. W. 2d. 210. There is nothing about the purpose of this statute nor the wording of the same that compels a conclusion that the Legislature intended by its enactment to limit or change the separate and

independent rights to compensation conferred upon dependents by sec. 6513.

The present claimant was not a party to the action brought by her husband. Nor was she in privity with him as to his then claimed rights, for, as we have already shown, her rights to compensation were not derived from his but came to her directly from the statute and thus no questions involving privity under the common law are here in issue. There being no privity between them as to their compensation rights, the adjudication in his case does not bar this claimant's right to recover by reason of estoppel, *res judicata,* or for any other discernible reason. *Harper* v. *Dick, Kerr & Co., supra; Fletcher* v. *Perry,* 104 Vt. 229, 158 Atl. 679.

We will now consider the questions raised by defendants' appeal. The first assumes that as far as the commissioner was concerned a final award denying compensation and dismissing the claim had been made before he proceeded to hear the evidence and make his findings and conclusions thereon. This assumption is not borne out by the record certified to us. At the start of the same the commissioner discusses the objections of the defendants and reviews many cases bearing on the question of whether the claimant's rights are derivative. He gives his opinion that they are and then appears the statement, ''Claim dismissed''. Then follows the findings of fact and at the conclusion of the same the entries: ''Compensation denied. Claim dismissed''. It is apparent from the whole record the commissioner. felt that under the holdings of this Court in *Larrabee* v. *Citizens Tel. Co.,* 106 Vt. 44, 169 Atl. 784, and *San Martin* v. *Rock & Sons Co. et al.,* 106 Vt. 301, 172 Atl. 635, he was required to certify at one time all questions appearing in the case and acted accordingly. It is plain that the record was not made up until after the hearing had been completed so it seems clear that the statement, ''claim dismissed'', did not theretofore appear in the case. Moreover, it is apparent that whenever this statement was made the commissioner did not intend by so making it to oust himself of jurisdiction to hear the evidence and determine the facts. There was no final adjudication by him until the final entry above referred to denying compensation and dismissing the claim. No doubt it would have been better if the commissioner had not inserted the statement of dismissal when and as he did

in the record but no prejudice has resulted to the defendants in consequence thereof.

Questions 2 and 3 on this latter appeal will be considered together. Dr. McIntyre was called as a witness by the claimant. After some preliminary testimony which included a statement that a cerebral hemorrhage is a rupture of a blood vessel he was asked the following question:

"Now, assuming, Doctor, that on January 2, 1938, Mr. Laird reported for work at the premises of the Vermont Highway Department Garage on Berlin Street; that during the night of January 1-2 there occurred the first severe snow fall of the year; that there fell during the night and up until 7:00 o'clock, about one foot of snow, and that from 7:00 o'clock in the morning until 12:00 o'clock the same day there fell four or five inches more of snow; that Mr. Laird's duties consisted of once an hour of walking around the premises of the Highway Department, a distance of between 550 and 600 steps, 85% to 90% of which were out-of-doors; that he made this trip each hour and that a large portion of the steps out-of-doors were in snow up to his knees; that in addition that he made this trip at 8:00 o'clock, at 9:00 o'clock, at 10:00 o'clock, 11:00 o'clock and 12:00 o'clock; that during the morning he opened and closed two large gates, one 18 feet and the other 8 feet in width at least twice and in addition shovelled a pathway free of snow and shovelled snow from in front of three double garage doors, each of which were 12 feet in width and the snow was shovelled away to the extent that not only the doors could be opened but that at least three of the doors could be swung back completely against the building; that this snow was wet and heavy; assuming all those facts to be the case, have you an opinion as to, and assuming further that there is more exertion in walking through the snow than there is in walking on flat ground without snow, considering and assuming that he is 64 years old and had a marked arteriosclerosis, assuming all that, have you an opinion as to whether the exertion put forth by the late Willis J. Laird on the morning of January 2, 1938, between the hours of 7:00 and 12:00 o'clock in performing the acts which I have heretofore described, precipitated or accelerated the happening of this cerebral hemorrhage? You may answer yes or no."

After stating that he had an opinion and being cautioned by

84

counsel for both sides that the question called for an opinion as to a fact and not as to a mere possibility he answered: "I would say that the exertion probably was the precipitating cause of the cerebral hemorrhage."

Later on this witness was asked by the commissioner: "When you state, doctor, in answer to Mr. Hunt's question that it was possible that this particular cerebral hemorrhage suffered by Mr. Laird could be caused by physical exertion and previously in your other testimony you testified that the exertion mentioned in the hypothetical question was probably the precipitating cause of the cerebral hemorrhage do you mean in this particular case Mr. Laird in all probability from his physical exertion received his cerebral hemorrhage?" The answer was: "Yes."

Dr. Levin, who was also called by the claimant, testified that the usual cause of cerebral hemorrhage was a sudden exertion on an already existing disease of the arteries such as arteriosclerosis. In reply to a hypothetical question similar to the one propounded to Dr. McIntyre he gave as his opinion that the exertion caused by the shovelling of the snow was enough to be the exciting or immediate cause of the hemorrhage and thus the indirect cause of the death. He also gave as his opinion that the exertion put forth by Laird on the day in question as set forth in the hypothetical question accelerated the progress of the arteriosclerosis.

Although the testimony of these two doctors was weakened as evidence to some extent in cross examination and by the testimony of Dr. Woodruff, called by the defendants, the effect of such examination and other testimony merely went to the weight to be attached by the trier to the previous testimony and did not destroy its probative value as evidence. From it the commissioner was justified in making finding 17 as set forth in question 2 (a). *Howley* v. *Kantor,* 105 Vt. 128, 133, 163 Atl. 628. Inasmuch as this finding is legally supported by evidence it is binding on us. *Kelley's Dependents* v. *Hoosac Lumber Co. et al.,* 95 Vt. 50, 55, 113 Atl. 818.

The hypothetical question as put to Dr. McIntyre was not objected to, as indeed it could not properly have been as it accurately and concisely stated facts to be reasonably drawn from the evidence, and such facts therein stated were in substance incorporated by the commissioner in his findings. There is no need to elaborate on these facts and findings for our de-

termination of the points here in issue raised by questions 2 (b) and 3. Such facts together with the medical testimony before noted and our cases applying to the same fully warranted the commissioner in drawing and making the conclusions appearing as question 2 (b). It is clear the conclusion that Willis received an injury "arising out of and in the course of his employment" was warranted by the evidence under the definition of these terms set forth in *Bundy et al.* v. *State of Vt. Highway Dept. et al.*, 102 Vt. 84, 88, 146 Atl. 68. It is equally clear the commissioner was justified in concluding that the injury was a "personal injury by accident" within the meaning of the act. The case on this point is governed by the *Giguere* case, *supra.* There a hernia was caused by strain in lifting. The defendants claimed that there was no injury by accident as there was merely an internal injury suffered when the claimant was doing his work in his usual and customary manner. This claim was rejected. Many cases are cited and discussed in support of the holding in the case to the effect that a sudden and unexpected internal injury caused by strain, over-exertion, or other mishap resulting in disability or death, suffered by a workman while doing his work in the natural, normal and regular way and exactly as he intended to do it, was an "injury by accident" within the meaning of the statute. The Court adopted as a definition of "accident" the use of the word in its popular and ordinary sense as denoting an unlooked for mishap or an untoward event which is not expected or designed. The case of *Clover, Clayton & Co., Limited* v. *Hughes,* (1910) L. R. A. C. 242 is quoted from with approval. In that case it is said: "An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health."

 In the *Giguere* case the hernia according to the medical testimony was caused by an abnormal strain of the structure in the inguinal region. In the case at hand such testimony was in effect that the hemorrhage was caused by the exertion put forth in doing the work of the employer. In our opinion the two cases in this respect are alike in principle. No stress is laid on the word "abnormal" in the opinion in the *Giguere* case and indeed from the cases cited therein and the language of this Court used in its holdings it is apparent that the result would have been the

same if the strain suffered by the workman while engaged, as there, in the business of his employer had resulted simply from a "strain". It cannot here be said Willis planned or designed to so exert himself that morning in the performance of his duties that a cerebral hemorrhage would result, nor that he as a sensible man who knew the nature of the work would have expected it. Consequently under the definition heretofore given and the holdings in the *Giguere* case the injury to him, as before stated, was "by accident" within the meaning of the statute. See, also, the *Clover* case, *supra*. We do not view it as important that the exact time of, or the exact place where, the rupture occurred can not be ascertained from the testimony. The material element here is that there was competent evidence tending to prove the rupture was brought about by exertion from his work on the premises for his employer. For cases other than those cited in the *Giguere* case which have held cerebral hemorrhages produced by work of the employee to be "personal injuries by accident" see: *Johnson* v. *Torrington*, (1909) 3 B. W. C. C. 68; *Metcalf* v. *Dept. of Labor & Ind.*, 168 Wash. 305, 11 Pac. 2d. 821; *Fealka* v. *Fed. Mining & Smelting Co.*, 53 Idaho 362, 24 Pac. 2d. 325; *Carter* v. *Travelers Ins. Co.*, 132 Tex. 288, 120 S. W. 2d. 581; Ann. 7 A. L. R. 1614.

██ The fact that Willis at the time of the injury was suffering from arteriosclerosis cannot change the result. From the medical testimony in the case it appears that the exertion in performing the work accelerated the progress of the disease. It follows that disability came upon him earlier than otherwise would have occurred and thus the injury was compensable. *Gillespie* v. *Vt. Hosiery & Machinery Co. et al.*, 109 Vt. 409, 199 Atl. 564; *Morrill* v. *Bianchi & Sons, Inc.*, 107 Vt. 80, 87, 176 Atl. 416; *Clover, Clayton & Co., Limited* v. *Hughes, supra;* Ann. 7 A. L. R., *supra*. In the *Gillespie* case as a result of a fall the progress of the arteriosclerosis from which the claimant in that case was then suffering was accelerated. In the present case the progress of the same kind of disease was accelerated by a strain. The only distinction between the two cases is that in the former case the injuries were the result of an external cause while in the present case they resulted from something internal. Both classes of injuries are compensable and the results flowing from each are the same in the respect here in question.

The vital distinction between the facts in the present case and those in the *Willis Laird* case is the presence here and the absence there of expert medical testimony connecting his injury with his employment. In the former case such testimony left such connection merely as a possibility. Here, as has appeared, there was competent evidence of this kind tending to establish the connection. Because of such evidence the commissioner was not required to base an inference on an inference in order to make any material finding or conclusion in the present case. It was because of the lack of such evidence that he was forced to base the material finding (d) in the former case on such inferences.

The first claim of error under question 4 briefed by the defendants is that their cross examination of Dr. McIntyre was improperly curtailed by the commissioner. Both sides have briefed this point but in our opinion this claimed error does not come within any reasonable construction of the question. There was here no ''exclusion of evidence offered by the defendants.'' If the defendants had desired a review of this matter of claimed curtailment they should have specifically asked for it.

However, in view of the briefing and for other reasons we have examined this point. Counsel for the defendants claimed that the witness who also testified in the *Willis Laird* case had limited his opinion to a ''possibility'' in the way of connecting the work with the injury in that case and had now changed to ''probability''. The witness attempted to explain the change. The reasons given were not satisfactory to counsel but apparently were to the commissioner who indicated strongly, although he did not so definitely state, that the cross examination along this line had proceeded far enough.

If it can be said that the commissioner abused his discretion in the matter it does not appear that the defendants were prejudiced thereby so as to making a rehearing necessary. The most favorable replies that they could expect to elicit from the witness would only go to the weight to be given to his testimony. The commissioner was the trier of the facts in both cases. It would seem that the purpose of this line of cross examination had been substantially accomplished at the time it was abandoned.

The defendants also claim error as the result of the exclusion by the commissioner of certain photographs and weather reports.

The first hearing in the present case was had in December, 1939. At the close of that hearing counsel for the defendants stated that the testimony of Dr. McIntyre had taken them by surprise and stated that they wished an opportunity to confer with certain doctors and put in expert medical testimony if they saw it. Evidence of no other kind was mentioned. The hearing was closed and the commissioner stated that another hearing would be had unless he was informed by counsel for defendants that they did not desire to use the doctors in the case. On February 5, 1940, the ·commissioner sent a letter to the parties and their attorneys, the body of which reads as follows:

> "In this case the defendants reserved the right to introduce medical testimony in defense and the same will be heard on Friday, February 9, 1940 at 1:30 in the afternoon at the office of the Commissioner of Industrial Relations, Montpelier."

At the hearing on February 9th counsel for the defendants offered as evidence photographs and weather reports to contradict certain testimony of a witness called by the claimant at the previous hearing. This evidence was objected to by the claimant as not coming within the purview of the present hearing. The commissioner stated that he had understood that this hearing was restricted to the limited purpose indicated and excluded the offered evidence.

 Clearly the ruling of the commissioner as to this evidence was discretionary and no abuse of discretion is shown. There can be no question but that it was understood at the close of the first hearing by all parties that the second hearing, if any, was to be limited to medical testimony. If counsel for the defendants were not satisfied with the way the matter was left they should have then so stated. Certainly when they received the letter of February 5th if they desired to put in other than medical testimony they should have notified the commissioner so that he in turn could have notified the claimant to be prepared to meet other evidence if he had felt it advisable to extend the purpose of the second hearing. In our opinion the defendants, under the circumstances, have no right to complain of the ruling of the commissioner in this respect.

All questions presented for review have been considered and the result is

*Judgment that the order of the commissioner of industrial relations denying compensation and dismissing the claim should be, and the same is, annulled, set aside and held for naught and judgment that the claimant is entitled to compensation and benefits as provided by the Workmen's Compensation Act. Let the claimant recover her costs in this Court. Let the result be certified to the commissioner of industrial relations for an award in accordance with the views herein expressed.*