CLARICE PETERSON v. STATE (OPERATING UNIVERSITY OF MINNESOTA HOSPITALS).[1]

April 20, 1951.

No. 35,425.

*Johnson, Sands, Brumfield & Maloney,* for relator.

*R. A. Woychik,* State Compensation Attorney, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review a decision of the industrial commission denying an award by the referee.

[1]Reported in 47 N. W. (2d) 760.

Relator entered the University of Minnesota School of Nursing on September 26, 1938, at the age of 18 years, matriculating in the three-year nursing course offered by that institution. The nursing school of the University of Minnesota is conducted in conjunction with clinical experience facilities of the Minneapolis General Hospital, the Glen Lake Sanatorium, and the Miller Hospital in St. Paul. Relator's first assignment to an affiliate hospital was the Miller Hospital in St. Paul for private duty training. This assignment covered the period from July 3, 1939, to August 31, 1939. She had no known exposure to tubercular patients on this assignment. Her second affiliate assignment was at the Minneapolis General Hospital for training in communicable diseases during a period of six weeks from August 12, 1940, to September 23, 1940. On this assignment, she served on a tuberculosis station for approximately a month, during which the station averaged eight to ten patients. She next received training in family nursing service during a period of six weeks from September 30, 1940, to November 9, 1940, under the direction of the Public Health Service in St. Paul. So far as the record shows, she was not exposed to tubercular patients during this assignment.

Relator's next affiliate assignment was to the Glen Lake Sanatorium for a period of one month from November 11, 1940, to December 8, 1940, for training in the care of tubercular patients. Out of 12 Mantoux tests given relator between October 5, 1938, through July 1940, one showed a positive reaction. She completed her training and graduated as a nurse on September 23, 1941. She then took employment at the University of Minnesota Hospitals for about one month, during which she was assigned to a station where about 15 surgical tubercular patients were confined for treatment. From November 1941 until May 15, 1947, when working, relator was engaged in private duty nursing, with no known tubercular contacts.

On May 15, 1947, relator took employment for three months at the U. S. Veterans Hospital at Oakland, California, where she was once more brought into contact with tubercular patients in the

course of her general nursing duties. At the termination of her employment there, chest X rays showed her heart and lungs to be within normal limits. She returned to the University of Minnesota Hospitals in October 1947 and was assigned to the neurological service as a trained nurse. At the hearing before the referee, relator testified that two of the patients in that service were suffering from tuberculosis. Beyond that, the record is silent as to tuberculosis contacts. She remained in that employment until the first part of February 1948, when she became ill and was admitted to the University Hospitals as a patient on February 6, 1948. Her illness was diagnosed as tubercular pleurisy with effusion. She remained under professional care at the University Hospitals until March 11, 1948, on which date she was transferred to Glen Lake Sanatorium. She was discharged from Glen Lake on May 27, 1949, and returned to her home.

Relator filed a claim petition with the industrial commission on January 28, 1949, against the state of Minnesota (operating University of Minnesota Hospitals), the city of Minneapolis (operating Minneapolis General Hospital), and Sanatorium Commission of Hennepin county as named employers, to recover compensation and medical benefits under L. 1947, c. 616, or, in the alternative, for workmen's compensation under the occupational-disease section of the workmen's compensation act. The referee, by his findings of fact and determination, denied relator's petition as to the state of Minnesota and dismissed the petition against the city of Minneapolis and the sanatorium commission. An appeal was taken to the industrial commission as to the University Hospitals alone. The industrial commission affirmed the findings of fact and determination of the referee.

Relator raises two legal issues:

(1) Is an employe of the University of Minnesota Hospitals entitled to the benefits provided by L. 1947, c. 616 (as amended by L. 1949, c. 558), where she claims that she became infected with tubercular bacilli in the course of her duties as a student nurse

between May and October 1940 and further claims that she developed the clinical disease of tuberculosis and became disabled as a result thereof on February 5, 1948?

(2) In the event that the first question is determined in the negative, is the employe entitled to recover compensation and other benefits under the occupational-disease provisions of the workmen's compensation act?

■ The industrial commission disallowed relator's claim on the first question for the reason that the infection occurred in 1940, which is prior to the passage of L. 1947, c. 616, and the disability did not occur until February 5, 1948. Section 1 of c. 616 reads:

"Any sanatorium employee of the state or of any county or municipal subdivision of the state whose duties in any such institution operated by the state or any county or municipal subdivision bring him in contact with patients or inmates therein who are afflicted with tuberculosis, which, if he contracts or becomes ill from tuberculosis, shall be entitled to the medical care and compensation provided by this chapter."

Section 2 provides that whenever the superintendent of any such institution learns that any employe whose duties bring him "in contact with patients or inmates therein," or who works in and around tubercular contaminated material, has become ill from tuberculosis while employed in such institution such superintendent shall report such illness to the industrial commission, which, upon receiving such report, shall mail claim blanks to the superintendent to be filled out by such employe claiming the medical and sanatorium treatment and compensation, whereupon the commission shall set the claim for hearing and determination as provided in the act.

Section 3 then provides in part that if, upon the evidence, the commission finds that the employe is suffering from tuberculosis contracted in the sanatorium, "by contact with inmates or patients therein or by contact with tubercular contaminated material therein," it shall order the superintendent to apply for the admission of the employe to the state sanatorium for consumptives or some coun-

ty tuberculosis sanatorium. The act further provides for payment of a fee to the institution where the employe is received for the care and maintenance of the employe and for compensation to the employe, or his dependents in case of death. The act was amended by L. 1949, c. 558, § 1, to include "institutional" employes, and further provides:

"* * * 'Contracts tuberculosis' shall be construed to mean the development of demonstrable lesions of tuberculosis or the demonstration of the germs of tuberculosis in that person's secretions or excretions."

It thus appears that an employe is not covered under L. 1947, c. 616, unless contact with persons afflicted with tuberculosis or with material contaminated with tuberculosis can be shown.

The referee in the instant case found in part as follows:

"That on February 6, 1948, the said employe became disabled by reason of the disease of tuberculous pleurisy with effusion, but said condition was not the result of any accidental injury sustained or occupational disease contracted during the aforesaid periods of employment with the State of Minnesota, University of Minnesota, University Hospitals, nor the result of any accidental injury or occupational disease contracted while assigned by said employer herein to duty at the Minneapolis General Hospital, operated by the named employer, City of Minneapolis, or the Glen Lake Sanatorium operated by the named employer, Sanatorium Commission of Hennepin County."

The referee thereupon disallowed relator's claim, and, upon appeal, his findings of fact and determination were "in all things affirmed" by the industrial commission. Upon review here, it appears that the only evidence in the record pertaining to relator's contact with persons afflicted with tuberculosis or with material contaminated with tuberculosis after the passage of L. 1947, c. 616, is her own testimony, to the effect that during her employment at the University Hospitals in the fall and winter of 1947-1948 two of her patients in the neurological service to which she was assigned were suffering

from that disease. The extent of her contact with these patients and whether or not they were in the contagious state was left to speculation.

We are here concerned primarily with the question whether the findings and decision of the commission are justified by the evidence. This court has previously stated that in reviewing the findings of the industrial commission it is our duty not to determine whether on the facts the decision of the commission is correct or even preferable to another, but rather to determine whether the findings have a sufficient basis of inference reasonably to be drawn from the facts. The same policy has been expressed by this court in cases saying that the findings of the commission are entitled to great weight and that this court will not disturb them unless they are manifestly contrary to the evidence; and that if, after an impartial consideration of the evidence and of the inferences which may fairly and reasonably be drawn therefrom, reasonable minds might reach different conclusions upon the question the findings must stand. Tometz v. Biwabik Min. Co. 171 Minn. 302, 213 N. W. 897; Fisher v. Fisher, 226 Minn. 171, 32 N. W. (2d) 424; Jurich v. Cleveland-Cliffs Iron Co. 233 Minn. 108, 46 N. W. (2d) 237; 6 Dunnell, Dig. & Supp. § 10426. From the record here, we cannot say that the findings and determination of the commission in connection with the first question were contrary to the evidence; hence, its decision on this point must be affirmed.

In view of the findings and decision of the commission, it appears to us that the attorney general's opinion of June 4, 1947, referred to in relator's brief, is not applicable.

■ The second question is whether relator is entitled to compensation and other benefits under the occupational-disease provisions of the workmen's compensation act. It is conceded that she was an employe of the state of Minnesota within the meaning of that definition in the workmen's compensation law. That tuberculosis is an occupational disease within the meaning of the act seems clear from our decisions in Otten v. University Hospitals, 229 Minn. 488,

40 N. W. (2d) 81, and Anderson v. Northwestern Hospital, 229 Minn. 546, 40 N. W. (2d) 442.

The present occupational-disease section of our workmen's compensation law was enacted by L. 1943, c. 633. Under § 4, subd. 3, the occupational disease for which compensation is sought must have been contracted within 12 months of the date of disability. The theory upon which the instant case was argued was that the primary infection occurred in 1940 while relator was employed by the University Hospitals as a student nurse and that her subsequent employment by the hospital in 1948 resulted in a reinfection, which was the direct cause of her breakdown. The medical testimony in the case bears out that theory. The theory in medical terminology was to the effect that the breakdown in 1948 resulted from an endogenous reinfection rather than from exogenous reinfection, i. e., that the disability of 1948 resulted from a growth of tubercular bacilli from within relator's body rather than a reinfection from without. If that is taken to be the case, then the question whether relator's breakdown came within the 12-month period required by L. 1943, c. 633, § 4, subd. 3, need not be considered here, because the disease, according to the medical testimony, was contracted in 1940, when tuberculosis was not included within the occupational-disease section of the workmen's compensation act. It was for this reason that the industrial commission denied compensation.

Relator, however, calls our attention to Kellerman v. City of St. Paul, 211 Minn. 351, 1 N. W. (2d) 378, in which the holding was that the disease of coronary sclerosis could not be held to have been contracted within the purview of the statute until it resulted in an interference with the bodily functions. In that case, a fireman employed by the city of St. Paul was overcome by the aforementioned disease on September 30, 1939, while actively cleaning up after a fire in the line of duty. In that same year and prior to the incident there in question, the legislature had added coronary sclerosis to the list of compensable diseases contained in the workmen's compensation act. Expert medical testimony agreed that

many years elapse between the inception of the sclerotic condition and resultant death, that it is difficult to determine at which stage it becomes a disease, and that until it results in disablement it cannot rightfully be called a disease. Against the argument that the disease which caused the death was not contracted within 12 months of disablement and that it was contracted prior to the amendment of 1939, making coronary sclerosis an occupational disease, this court said (211 Minn. 354, 1 N. W. [2d] 380) :

"* * * In view of the nature of coronary sclerosis, the doubt as to the stage at which it should be characterized as a disease, and especially the negative results flowing from any other construction, we conclude, as did the commission, that coronary sclerosis is 'contracted' within the meaning of the statute when it first manifests itself so as to interfere with bodily functions."

It will be seen that the court in that case, so far as pertinent here, based its decision on the ground that from the nature of coronary sclerosis it could not rightfully be called a disease until it resulted in disablement, and two doctors so testified.

The same cannot be said in this case. Indeed, the entire theory of the case was based on the proposition that the primary infection resulting in the disease was contracted in 1940, a proposition which received medical support in the testimony. In its opinion in the instant case the commission said:

"The theory upon which the employe bases her claim appears to be that the infection was introduced into her system in 1940, and had remained dormant or in a quiescent condition until it became reactivated in the early part of 1948. In the presentation of the case emphasis was placed upon the reactivation as being due to endogenous reinfection rather than exogenous reinfection. The testimony in the case is in support of this theory. If this is accepted as the cause of her breakdown, then the infection of 1940, which later resulted in her disability in early 1948, occurred at a time when tuberculosis was not covered under the occupational disease law."

It is our opinion that under the facts and circumstances here the decision of the commission must also be affirmed on the second point raised by relator.

Affirmed.