BERNARD F. YAEGER v. DELANO GRANITE WORKS AND ANOTHER.[1]

February 29, 1952.

No. 35,665.

---

[1]Reported in 52 N. W. (2d) 116.

*H. Horace Burry,* for relator.
*C. E. Warner,* for respondents.

MAGNEY, JUSTICE.

Certiorari to review a determination of the industrial commission denying compensation.

For 12 years until he became disabled, Bernard F. Yaeger, now 59 years of age, had been employed by the Delano Granite Works as a granite cutter, shaping monuments with hand hammer and automatic air tools. He became incapacitated from silicosis, an occupational disease, resulting from the nature of his employment, and sought compensation. The industrial commission was of the opinion that the statutory limitation particularly applicable to this disease barred his right to compensation. This determination we are asked to review.

It is conceded that silicosis is an occupational disease, and covered by the workmen's compensation act. But to entitle a workman to compensation for disability from this disease, he must have contracted it within a certain time previous to his disablement. The statute covering this matter is M. S. A. 1945, § 176.66, subd. 3,[2] which reads:

"Neither the employee nor his dependents are entitled to compensation for disability or death resulting from occupational disease, unless such disease is due to the nature of his employment as defined in section 176.01, subdivision 15, and was contracted therein within 12 months previous to the date of disablement; *except in the case of silicosis* or asbestosis, *in which cases the disease must have been contracted within three years previous to the date of disablement.*" (Italics supplied.)

---

[2]L. 1949, c. 500, § 1, an amendment to the statute, was approved April 20, 1949, after disability arose in this case.

Yaeger worked steadily until he came down with pneumonia and a bad case of silicosis on December 31, 1948, except for seven weeks in 1947, when he was unable to work because of a "nervous stomach." The first time he noticed any effect from what he now knows is silicosis was in the middle of 1948. Until that time he had no reason to suspect that there was anything wrong with his lungs, and he had good working capacity. He states that at that time, while engaged in breaking off part of a stone with a 12- to 16-pound hammer, "all of a sudden it was just as though my air stopped and from that day on I noticed it and before that I never had any idea there was anything like that." Prior to that time he had no pains in the chest. Since then he has coughed, been short of breath on slightest exertion, and weak and tired.

In 1938, and every year since, except in 1946, when films were unavailable, Yaeger has been examined by a doctor and X rays have been taken. X rays taken in 1944, 1945, 1947, and 1948 showed a progressively increased area and density of a silicotic condition. As early as the X ray of April 26, 1944, an advanced second-degree silicosis was shown, with extension nodules in both lungs, which in some places were becoming confluent. Prior to 1948, he was not advised as to the findings of those examinations as to silicosis. Yaeger is totally and permanently disabled. His disability is the result of pulmonary silicosis, third degree, produced by his long-standing exposure to silica dust in his occupation as a granite cutter. He passed from stage 2 to stage 3 between 1945 and 1947. He was physically fit for work as a stonecutter until December 1948. From August 1949 to December 1949, contrary to the advice of his physician, he worked intermittently at a light job, earning $400.20. Since then he has been totally incapacitated.

Silicosis is caused by the inhalation of dust-laden silica. When a person works in a place with a high concentration of silica dust, the silica gradually accumulates in the lungs, eventually causing such a silicotic condition that the person becomes incapacitated for work. Without going into a discussion of the difference between stage 2 and stage 3 (the advanced variety), it is sufficient to state

that, even when a person is suffering from stage 3 silicosis, he would not experience shortness of breath unless he encountered complications; and, according to respondents' expert, Dr. J. A. Myers, a great many persons go through life with stage 3 silicosis without incapacity, but when some infection comes along, attention is usually called to the silicosis.

On this record, the industrial commission found:

"That on December 31, 1948, said employe suffered an accidental injury which arose out of and in the course of his said employment by reason of the fact that on said date he became temporarily totally disabled from an occupational disease known as silicosis. That said disease was due to and caused by the nature of his employment with said employer but was not contracted within three years prior to the date of his disablement."

In an opinion accompanying the determination, Commissioner Faricy said:

"From the * * * evidence submitted, it is clear that the employe had contracted 'silicosis' in 1944, and had a fairly well developed silicotic condition present to at least a second degree on a basis of 1 to 4 in 1944 and 1945. This would establish the contracting of silicosis well beyond the three year limitation imposed by Sec. 176.66, Subd. 3."

The question submitted to us is whether, under the evidence in this case, the occupational disease of silicosis was contracted within three years before disablement within the meaning of the workmen's compensation act.

Yaeger contends that the law applicable to his case can be stated as follows:

"Silicosis, as an occupational disease under the Workmen's Compensation Act, is contracted at the time when it manifests itself so as to interfere with bodily functions."

As an authority he cites Kellerman v. City of St. Paul, 211 Minn. 351, 1 N. W. (2d) 378. Kellerman was a city fireman. On Septem-

ber 30, 1939, he responded to a call. After the fire had been extinguished, while assisting in cleaning up, he felt a severe pain in his chest. He died shortly thereafter. The cause of death was coronary sclerosis. His widow filed a claim for compensation for herself and minor children. The city contended, among other things, that the disease which caused Kellerman's death was not contracted within 12 months of disablement as required by statute. Petitioner conceded that (211 Minn. 352, 1 N. W. [2d] 379) the "original commencement of the condition probably occurred more than a year prior to Kellerman's death," but claimed that the disease was not " 'contracted' within the meaning of the law until it manifested itself or interfered with the bodily functions of decedent." The medical testimony was to the effect that coronary sclerosis (211 Minn. 353, 1 N. W. [2d] 379) "is a hardening of the arteries which supply the blood for the nourishment of the heart muscle. It consists largely of an infiltration of cholesterol into the middle or inner coat of those arteries whereby a thickening of that coat takes place which ultimately narrows down the bore of those vessels so that a smaller supply of blood and a continuously decreasing supply of blood, as years go on, is carried to the heart muscles, so that ultimately the heart muscles fail because of too small a supply of blood to them." All the expert witnesses agreed that many years elapse between the inception of the sclerotic condition and resultant death. The court said (211 Minn. 353, 1 N. W. [2d] 379):

"* * * It would therefore be highly improbable for a fireman to die or become otherwise disabled within one year after the origin of sclerosis in the coronary arteries. Thus the anomalous situation is presented that, while one subsection of the statute makes coronary sclerosis an occupational disease for firemen, another renders it impossible for firemen to receive its benefits."

The court disposed of the question in the following language (211 Minn. 354, 1 N. W. [2d] 380):

"* * * In view of the nature of coronary sclerosis, the doubt as to the stage at which it should be characterized as a disease, and especially the negative results flowing from any other construction, we conclude, as did the commission, that coronary sclerosis is 'contracted' within the meaning of the statute when it first manifests itself so as to interfere with bodily functions."

There is great similarity in the development of silicosis and coronary sclerosis. In both cases many years may elapse, and usually do elapse, between the inception of the condition and the resultant disability. Both are caused by the infiltration and gathering of substances. In coronary sclerosis the substance is cholesterol, which slowly and progressively thickens the middle and inner coat of the arteries that supply the blood for the heart muscle, thus gradually decreasing the size of the bore of those vessels until the muscle fails because of insufficient blood supply. In silicosis the substance is dust-laden silica, which eventually by the continued infiltration of silica with progressive accumulation creates a condition in the lungs which makes them unable to supply sufficient oxygen for the blood. Coronary sclerosis and silicosis are thus similar, in that each requires a long period of infiltration, accumulation, and development before there is an impairment of bodily functions.

In Krzewinski v. Robert Gage Coal Co. 304 Mich. 63, 7 N. W. (2d) 223, a workmen's compensation case involving disablement caused by silicosis, where there was a one-year limitation, the court approved the reasoning and decision in Kellerman v. City, of St. Paul, 211 Minn. 351, 1 N. W. (2d) 378, and held that silicosis is contracted, within the terms of the compensation act providing that silicosis is not compensable unless contracted within one year of the disablement, when the symptoms appear and not when a deposit of silica in the lungs begins. The court said that the testimony in the case showed that (304 Mich. 67, 7 N. W. [2d] 224)—

"the beginnings of silicosis dating from the first deposit are hard to detect and usually take a long period of time before being dis-

covered. Therefore, we are of the opinion that in order that the statute may be effective and purposeful, it must be construed as providing that the date of contracting starts when symptoms appear. Otherwise, since it takes so long for the deposits to build up so that symptoms appear, the section of the statute requiring that contracting of the disease must come within one year of the disablement would, in an effective or practical sense, take away all the benefit of the section making the disease compensable."

We are unable to see any distinction between coronary sclerosis and silicosis when applying the statutory limitation. In both cases, it is undisputed that it takes many more years than the statutory limitation for either disease to develop. In each case, the employe is capable of full performance of his duties until clinical symptoms appear. It might be said that the contracting of silicosis is not a matter of a moment or an occasion, but of a long period of time, and that the victim keeps on contracting during a long period of exposure until the breakdown, the clinical symptom, arrives. Silicosis is being continually contracted—a build-up to a break by accumulation. The statute does not commence to run until the victim has "contracted" the disease, and the process of contracting does not cease until physical impairment manifests itself. In Matter of Daley v. H. C. Miner Lithographing Co. 262 N. Y. 542, 188 N. E. 56, the same theory was applied in a lead poisoning case. See, also, Williams v. Industrial Acc. Comm. 71 Cal. App. (2d) 136, 161 P. (2d) 979; Urie v. Thompson, 337 U. S. 163, 69 S. Ct. 1018, 93 L. ed. 1282; Duncan v. Carpenter & Phillips, 233 N. C. 422, 64 S. E. (2d) 410; Brown v. St. Joseph Lead Co. 60 Idaho 49, 87 P. (2d) 1000.

Employer contends that Peterson v. State (Operating University Hospitals), 234 Minn. 81, 47 N. W. (2d) 760, supports its contention. We there pointed out the distinction between the Peterson case and the Kellerman case, *supra*. Since we are of the opinion that the Kellerman case and the instant case are so similar as to require the same disposition, the distinctions pointed out in the Peterson case must necessarily apply here. As Yaeger suffered no

impairment of bodily functions caused by silicosis or, as has been stated, had no clinical symptoms of silicosis until well within the three-year limitation, he is not barred by the limitation.

Case remanded with instructions to award compensation in conformity with this opinion.

Relator is allowed $250 as attorney's fees.

Reversed.