# HILDA CARROLL v. STATE OF MINNESOTA, DEPARTMENT OF SOCIAL SECURITY, DIVISION OF PUBLIC INSTITUTIONS, FERGUS FALLS STATE HOSPITAL.[1]

April 15, 1954.

No. 36,246.

[1]Reported in 64 N. W. (2d) 166.

*J. A. A. Burnquist,* Attorney General, and *G. L. Ware,* Special Assistant Attorney General, for relator.

*John E. Mullen,* for respondent.

KNUTSON, JUSTICE.

Certiorari to the industrial commission to review an award to dependents of a deceased employee.

The facts are not in dispute. Peter Lawrence Carroll was employed on January 7, 1939, at the Fergus Falls State Hospital at a weekly wage of $18.46. He contracted pulmonary tuberculosis while at such work from contact with tubercular inmates. As a consequence, he became temporarily totally disabled on January 7, 1939. He entered the county sanatorium for tuberculosis at Battle Lake on February 5, 1939, and remained there until February 8, 1940. He re-entered the sanatorium on October 27, 1940. In a decision of the referee filed June 9, 1942, Carroll was awarded compensation for 65 weeks at the rate of $12.31 per week; the director of public institutions was ordered to provide for the medical care and maintenance of such employee in the sanatorium from the date of the order "henceforth"; and the expense thereof was ordered to be paid by the department of social security under the provisions of L. 1941, c. 479. Payment of the weekly compensation was fully complied with. By October 10, 1943, Carroll had left the sanatorium but periodically

visited the Fergus Falls Clinic for pneumothorax. In the fall of 1944 he did some work for another employer on a part-time basis selling nursery stock. His disease was then more or less stationary but was not completely arrested. There was a marked activation of the disease during August 1951. He entered Wright Memorial Hospital for a few days, and on September 14, 1951, he entered Nopeming Sanatorium, where he died of tuberculosis on October 29, 1951. He was survived by his dependent widow and four children.

A petition was thereafter filed by the widow claiming benefits for the death of her husband and for other compensation. The referee made an award in which the employer was directed to pay the Fergus Falls Clinic $248; Wright Memorial Hospital, $199.30; reimburse Otter Tail county $429.50 for money it had expended on behalf of decedent; reimburse petitioner in the sum of $495.05 which she had expended; and further ordered the employer to pay compensation for 8 5/6 weeks for temporary total disability from August 29, 1951, through October 29, 1951, and to pay compensation at the rate of $12.31 per week to petitioner for herself and dependent minors, not to exceed $7,500. On appeal, the findings and determination of the referee were affirmed by the commission.

■ It is apparent from the referee's memorandum attached to his findings and determination that the award, at least as far as the death benefits are concerned, is based on the assumption that L. 1947, c. 616, as amended, applied.

At the outset, it must be kept in mind that decedent was not employed in a tuberculosis sanatorium. It therefore becomes important to first determine whether L. 1947, c. 616, as amended, has any application at all to a person not employed in a tuberculosis sanatorium when the disease is contracted, first, with respect to compensation and medical expenses incurred during his lifetime and, second, with respect to death benefits to dependents of the deceased employee.

L. 1947, c. 616, has proved to be a troublesome act. Its history is discussed in our recent case of Kaljuste v. Hennepin County Sanatorium Comm. 240 Minn. 407, 61 N. W. (2d) 757.

It seems to be admitted that at the time decedent first became disabled his rights were governed by L. 1941, c. 479. The original award was made under that law. Its applicability has not been questioned. Chapter 479 applied to employees of any state institution under the direction of the division of public institutions, department of social security. L. 1947, c. 616, had its origin in H. F. 114. When first introduced, H. F. 114 included any employees of the state or of any county or municipal subdivision of the state whose duties bring them in contact with tubercular patients or inmates or tubercular contaminated material. Section 5 of the original bill contemplated the repeal of all of L. 1941, c. 479.[2]

---

[2]See original engrossed bill on file in office of secretary of state which reads:

"A BILL FOR AN ACT RELATING TO THE EMPLOYMENT OF PERSONS IN CERTAIN PUBLIC INSTITUTIONS: THE TREATMENT OF SAID EMPLOYEES FOR TUBERCULOSIS CONTRACTED IN SUCH INSTITUTIONS AND PAYMENT TO THEM AND THEIR DEPENDENTS FOR DISABILITY AND DEATH RESULTING FROM TUBERCULOSIS AND REPEALING LAWS OF 1941, CHAPTER 479, AS AMENDED BY LAWS OF 1945, CHAPTER 270.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MINNESOTA:

"Section 1. Any employee of the state or of any county or municipal subdivision of the state whose duties in any institution operated by the state or any county or municipal subdivision bring him in contact with patients or inmates therein who are afflicted with tuberculosis or who works in and around any tubercular contaminated material, whether or not he has contact with such inmates or patients, shall, if he contracts or becomes ill from tuberculosis, be entitled to the medical care and compensation provided by this chapter.

"Section 2. Whenever the superintendent of any state, county, city or village institution learns that any employee of such institution whose duties bring him in contact with patients or inmates therein or who works in and around any tubercular contaminated material, has contracted or become ill from tuberculosis while employed in such institution, such superintendent shall report such illness to the Industrial Commission. Copies of such report shall be sent to the director of the Division of Public Institutions or to the Director of the Division of Social Welfare if a state institution; to the County Board if a county institution; and to the governing body of the city or village if a municipal institution. The Industrial Commission, upon receiving such report, shall mail to the superintendent of such institution

Prior to the final passage of the bill it underwent several amendments by which its scope was materially limited. The first amend-

blank forms to be filled out by such employee claiming the medical and sanatorium treatment and compensation hereinafter provided for. The Industrial Commission shall thereupon set the claim on for hearing and determination in the same manner as claims of other public employees under the workmen's compensation law are heard and determined.

"Section 3. If, upon the evidence mentioned in the preceding section, the Industrial Commission finds that such employee is suffering from tuberculosis contracted in the institution by contact with inmates or patients therein or by contact with tubercular contaminated material therein, it shall order the superintendent of such institution to apply for the admission of the employee to the state sanatorium for consumptives or some county tuberculosis sanatorium. There shall be paid to the institution where such employee may be received, the same fee for the maintenance and care of such person as is received by such institution for the maintenance and care of a non-resident patient. If the employee worked in a state institution or in a county tuberculosis sanatorium, payment for such care shall be made by the department of social security out of funds heretofore or hereafter appropriated for aid to or maintenance of county tuberculosis sanatoria. If employed in any other institution such payment shall be made from funds allocated or appropriated for the operation of such institution, or in such other manner as the appropriate county board or city or village governing body may determine. Such employee shall receive full hospital care and medical care, without cost, for the duration of the infection of tuberculosis, or any recurrence thereof or any disability resulting therefrom. The Industrial Commission shall order payment to such employee of two-thirds of his salary during the period of disability and until the employee is able to resume his previous position or until the medical board of the institution where the employee is or has been hospitalized shall certify that such employee is able to pursue, without injury, some other normal work or occupation. If such employee dies leaving dependents as defined by the workmen's compensation law of the state, there shall be paid to such dependents the sum of $7,500, if tuberculosis was the primary infection and the authentic cause of death. Such compensation for death shall be paid to such dependents in installments of two-thirds of the employees wage at intervals when the wage was payable, as nearly as may be. Provision for payment of all compensation provided shall be made in the manner and out of the funds provided for payment of benefits for such

ment adopted[3] would have repealed M. S. A. 1945, §§ 246.27, 246.28, 246.29 (L. 1941, c. 479, §§ 1, 2, and 3), 251.04 (L. 1941, c. 479, § 4, as amended by L. 1945, c. 270, § 1), and 251.05 (L. 1941, c. 479, § 5). The only effect of this amendment to the bill would have been to designate the statutes included in the repealing section by coded number instead of by chapter number. It would still have repealed all of L. 1941, c. 479, as amended by L. 1945, c. 270, as the original bill intended to do.

The bill was again amended so as to strike out the repealer of §§ 246.27 and 246.28.[4]

By the final amendment the bill was limited to employees of tuberculosis sanatoria alone.[5] As so amended, it passed the legislature.

From these amendments it is evident that the legislature deliberately limited the act to employees of tuberculosis sanatoria, and, as such, it could not have any application to decedent.

employees under the general provisions of the workmen's compensation law.

"Section 4. All employees of state institutions, under the provisions of Laws 1941, Chapter 479, as amended, who are now receiving benefits shall continue to receive such benefits, and in addition thereto, shall, beginning with May 1, 1947, be paid benefits as provided by this act.

"Section 5. Laws 1941, Chapter 479, as amended by Laws 1945, Chapter 270, is hereby repealed."

[3]Journal of the House 1947, pp. 393 and 394.

[4]Journal of the House 1947, p. 455.

[5]Journal of the House 1947, pp. 1909 and 1910. This amendment reads:

"Mr. Allen from the Committee on Appropriations to which was referred—

"H. F. No. 114, A bill for an act relating to the employment of persons in certain public institutions; the treatment of said employees for tuberculosis; repealing Minnesota Statutes 1945, Sections 246.27, 246.28, 246.29, 251.04 and 251.05.

"Reports the same back with the following amendments:

"Strike all of Section 1 and substitute in lieu thereof the following:

" 'Any sanatorium employee of the state or of any county or municipal subdivision of the state whose duties in any such institution operated by the state or any county or municipal subdivision bring him in contact with patients or inmates therein who are afflicted with tuberculosis, which, if

■ L. 1947, c. 616, was amended by L. 1949, c. 558, so as to again include employees of state, county, or municipal institutions in addition to tuberculosis sanatoria. It is significant to note, however, that § 6 of the act (codified as M. S. A. 251.045)[6] was left exactly as L. 1947, c. 616, § 4, had been. The retroactive effect of the 1949 amendment was therefore limited to employees of tuberculosis sanatoria exactly as it had been in c. 616, of the prior law. It is idle for us to speculate as to why the legislature would amend the act so as to include employees of all state, county, and municipal institutions in the designated class and still leave this section pertaining to retroactivity as it was. It may have been due to inadvertence or oversight, but, whatever it was, in the absence of any showing to the

he contracts or becomes ill from tuberculosis, shall be entitled to the medical care and compensation provided by this chapter.'

"Sec. 2, line 2, strike the word 'institution' and insert in lieu thereof, the words 'tuberculosis sanatorium'.

"Sec. 3, line 3, strike the word 'institution' and insert in lieu thereof, the words 'tuberculosis sanitorium'.

"Sec. 3, line 12, strike the word 'institution' and insert in lieu thereof the words 'the state tuberculosis sanitorium'.

"Sec. 3, line 15, strike the word 'institution' and insert in lieu thereof the words 'tubercular sanitorium'.

"Sec. 3, line 22, strike the word 'or', and insert in lieu thereof the word 'of'.

"Sec. 4, line 1, strike the word 'institutions' and insert in lieu thereof the words 'tubercular sanitorium'.

"Sec. 5, line 1, strike the figures '246.27' and '246.28'.

"Line 5 of the title strike the figures '246.27' and '246.28'.

"With the recommendation that when so amended the bill do pass.

"This Committee action taken April 18, 1947.

"Claude H. Allen,<br>"Chairman.

"Which was adopted."

[6]"All employees of state tuberculosis sanatorium, under the provisions of Laws 1941, Chapter 479, as amended, who are now receiving benefits shall continue to receive such benefits, and in addition thereto, shall, beginning with May 1, 1947, be paid benefits as provided by sections 251.041 to 251.045."

contrary, the act may not be given retroactive effect. M. S. A. 645.21 reads:

"No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature."

See, also, Johnston v. State, 241 Minn. 72, 62 N. W. (2d) 347; Peterson v. State (Operating University Hospitals), 234 Minn. 81, 47 N. W. (2d) 760.

In view of the fact that the legislature had so recently and deliberately dealt with the whole proposition of whether the act should include employees of all state, county, and municipal institutions or be limited to employees of state sanatoria alone, we cannot say that they did not have this matter in mind when they re-enacted the section dealing with retroactivity in the same language as it had previously existed. It is interesting to note that the legislature also retained § 7 of the 1949 act exactly as L. 1947, c. 616, § 5, had been, thereby again repealing M. S. A. 1945, §§ 246.29, 251.04, and 251.05, even though all of those sections had already been repealed by the 1947 act. However, there being no ambiguity in the language used, it must follow that the 1949 amendment could have no application to decedent, at least as far as his rights to compensation or medical expenses during his lifetime are concerned, and that whatever rights he had in that respect were governed by L. 1941, c. 479.

■ It is also apparent that the allowance of compensation and medical expenses incurred outside a state or county sanatorium cannot be sustained under L. 1941, c. 479. Total compensation permissible under that chapter has been heretofore allowed and paid. The act provides for hospitalization in a state or county hospital only. No provision is made for hospitalization outside of such hospital or for medical expenses paid outside such hospital. The original award of the commission provides for medical care and maintenance in the Otter Tail County Sanatorium from that date henceforth. No provision is, or could be, made for payment of expenses for treatment outside of a state or county sanatorium. When L. 1941, c. 479, was amended by L. 1945, c. 270, no change was made in that respect. The record does not show whether the hospital or

medical expenses allowed here were incurred while decedent was in a state or county tuberculosis sanatorium or not. It may be that on a proper showing some or all of these expenses could be allowed under L. 1941, c. 479, as amended. If they can be allowed at all, the allowance must be under that chapter and not under L. 1947, c. 616, as amended. Under the liberal construction accorded workmen's compensation laws, such medical expenses should be allowed, even though technically they were incurred in a place not designated by the original award, if such place qualifies as a state or county tuberculosis sanatorium. Nor should the fact that decedent was temporarily discharged from the hospital and employed on a part-time basis elsewhere disqualify him from continued hospital and medical treatment. It is not disputed in this case that the tuberculosis infection was never completely arrested from the time it was first contracted until decedent died. Under these circumstances, he should have been entitled to continued treatment in a state or county sanatorium whenever the disease became reactivated, even though he was temporarily able to leave the hospital for short periods of time, under the original award of the commission which provided for hospital and medical care from that date "henceforth." It does not follow, however, that the state would be liable for treatment outside a state or county sanatorium.

■ With respect to death benefits, it is the contention of petitioner that death creates an entirely new right in favor of the dependents and that the law in effect at the time of death governs the rights of dependents. At the time of death, L. 1947, c. 616, as amended by L. 1949, c. 558, contained provisions for the death benefits allowed by the commission. Employer, on the other hand, contends that the law existing at the time decedent contracted the infection and became disabled governs. At that time there was no provision for such death benefits under L. 1941, c. 479.

We have held on a number of occasions that the rights of dependents to recover death benefits are separate and distinct from the rights of an employee to recover compensation or medical or hospital benefits during his lifetime. In State ex rel. Carlson v. District Court, 131 Minn. 96, 97, 154 N. W. 661, we said:

"* * * The claim of plaintiff [the widow of a deceased workman] for compensation does not arise from the injury to her husband, but is a new and distinct right of action created by his death."

See, also, Lewis v. Connolly Contracting Co. 196 Minn. 108, 264 N. W. 581; Nyberg v. Little Falls Black Granite Co. 202 Minn. 86, 277 N. W. 536; Johnson v. Pillsbury Flour Mills Co. 203 Minn. 347, 281 N. W. 290; Dale v. Shaw Motor Co. 206 Minn. 99, 287 N. W. 787.

■ We also hold that the law in effect at the time of the employee's death governs the rights of the dependents. State ex rel. Carlson v. District Court, *supra;* State ex rel. Globe Ind. Co. v. District Court, 132 Minn. 249, 156 N. W. 120; Soderstrom v. Curry & Whyte, Inc. 143 Minn. 154, 173 N. W. 649; Warner v. Zaiser, 184 Minn. 598, 239 N. W. 761; Ogren v. City of Duluth, 219 Minn. 555, 18 N. W. (2d) 535; Pittman v. Pillsbury Flour Mills, Inc. 234 Minn. 517, 48 N. W. (2d) 735.

We realize that the authorities are not in accord on this question. While decisions from foreign jurisdictions are often of little value unless the statutory provisions upon which the decision is based are the same or similar to ours, it does seem that we follow what might well be designated the minority view. For an annotation on the subject, see 82 A. L. R. 1244.

The case of Cote v. Bachelder-Worcester Co. 85 N. H. 444, 160 A. 101, 82 A. L. R. 1239, illustrates the contra rule. However, after the decision in that case, the statute in New Hampshire was amended. In the later case of Hirsch v. Hirsch Brothers, Inc. 97 N. H. 480, 485, 92 A. (2d) 402, 405, in taking note of such statutory change, the New Hampshire court said:

"* * * The defendants rely upon Cote v. Company, 85 N. H. 444, to support the ruling. That case arose before the statute took its present form, at a time when compensation due in case of death was payable to the 'legal representative [of a decedent] for the benefit of [his] dependents.' P. L., c. 178, s. 20. * * *

"The following language originating with Laws 1947, c. 266, s. 20, contrasts with that of the former act: 'If death results from the injury, the employer shall pay to, or for the dependent or depend-

ents of the deceased employee * * * a weekly compensation * * *.' These provisions are followed by others which indicate that the compensation is 'payable to a widow * * * for the benefit of herself * * * and dependent child or children,' and further provide that the Labor Commissioner may 'determine in its discretion what portion * * * shall be applied for the benefit of any such child * * * and may order the same paid to a guardian.' s. 20 I. The section indicates a legislative purpose to create in a dependent widow or child 'a separate right of action for the loss resulting' (Cote v. Company, *supra*) ; and in our judgment the petition to enforce such rights is properly brought by the dependents rather than by a representative of the decedent employee. It follows that the rights of the dependents are to be determined according to the law in force at the time the rights arose, namely, upon the death of the employee."

That decision is in accord with our view.

State ex rel. Slaughter v. Industrial Comm. 132 Ohio St. 537, 9 N. E. (2d) 505, is apparently in accord with our decisions, although the statute involved in that case differs somewhat from our statute. But see the majority and dissenting opinions in State ex rel. Efford v. Industrial Comm. 151 Ohio St. 109, 84 N. E. (2d) 493.

In 58 Am. Jur., Workmen's Compensation, § 73, we find the following statement:

"* * * where the statute confers upon the dependents a new and independent right to compensation on account of his death, it is generally held that the right to such compensation is governed by the law in force at the time of death rather than at the time of injury, when the two events are separated in time."

That is exactly the situation we have here. Our decision in State ex rel. Carlson v. District Court, 131 Minn. 96, 154 N. W. 661, *supra*, and the cases which have followed it have stood unmolested since 1915. We must assume that it has met with legislative approval over all these years. Therefore, if there is now to be a change, it should come from the legislature rather than from the courts.

We do not overlook the contention of employer that the rights of dependents are derivative and become fixed by law in effect at

the time the injury occurs or the disease is contracted. In Nyberg v. Little Falls Black Granite Co. 202 Minn. 86, 94, 277 N. W. 536, 540, we said:

"* * * When injury and death result to a workman in the course of his employment, the two compensable conditions, injury and death, arise out of the same casualty, and the rights to compensation arising therefrom should be determined in one proceeding. While those rights may exist independent of each other and accrue to different parties, those of the dependents are nevertheless derivative from those of the employe."

We also said in that case (202 Minn. 93, 277 N. W. 539):

"The right of the employe to compensation arises at the time of injury and belongs to him alone. The right of the dependents to compensation arises at the time of the employe's death and is a separate and distinct right belonging to them. State ex rel. Carlson v. District Court, 131 Minn. 96, 154 N. W. 661. The employe, during his lifetime, cannot deprive his dependents of their rights by a settlement made with the employer. Lewis v. Connolly Contracting Co. 196 Minn. 108, 264 N. W. 581. Thus the act has created two distinct rights, one in the employe and the other in his dependents."

While we did hold that the workmen's compensation acts contemplate only one proceeding for each casualty in the Nyberg case, it must be borne in mind that that case did not deal with L. 1947, c. 616, as amended. The referee in the case now before us was of the opinion, as stated in his memorandum, that L. 1947, c. 616, was no part of our workmen's compensation laws. That position has now been rejected by our recent decision in Kaljuste v. Hennepin County Sanatorium Comm. 240 Minn. 407, 414, 61 N. W. (2d) 757, 762, where we held that L. 1947, c. 616, as amended, "is supplementary to, and to that extent a part of, the workmen's compensation act." Our decision in the Nyberg case must be read with that construction of the law now before us in mind. Where L. 1947, c. 616, as amended, has created a new right on behalf of the dependents which did not

exist on behalf of the employee, it is proper to determine such rights in a separate proceeding, as was done here.

It is no doubt true that the rights of dependents are derivative in the sense that the injury or disease must be the "authentic cause of death" (see § 251.043) ; still the rights of dependents do not arise until the death occurs. Nyberg v. Little Falls Black Granite Co. 202 Minn. 86, 277 N. W. 536; Dale v. Shaw Motor Co. 206 Minn. 99, 287 N. W. 787. Until death occurs, the rights of dependents to compensation are inchoate rights contingent in nature and entirely dependent upon the employee's death as a result of the injury or disease. Dale v. Shaw Motor Co. *supra*. As long as the rights remain inchoate, they are subject to future legislation. State ex rel. Rockwell v. State Board of Education, 213 Minn. 184, 189, 6 N. W. (2d) 251, 257, 143 A. L. R. 503. When death occurs, the rights then become fixed (Todeva v. Oliver I. Min. Co. 232 Minn. 422, 45 N. W. [2d] 782), and it is for that reason that the law in effect at that time governs.

■ Employer has cited and relies upon many cases involving actions brought to recover for the wrongful death of a person resulting from tort liability. The differences between the rights of dependents under the workmen's compensation act and a right given dependents to recover for death due to a negligent or tort liability are discussed in our case of Lewis v. Connolly Contracting Co. 196 Minn. 108, 264 N. W. 581, *supra*. As pointed out in that decision, in wrongful death cases the majority rule holds that there is but one wrong and that, if the injured person recovers a judgment or makes a settlement during his lifetime, his dependents have no further cause of action after his death for such wrong. That is not true under workmen's compensation statutes. There, a settlement by the employee during his lifetime does not bar recovery by the dependents after his death. See, also, Nyberg v. Little Falls Black Granite Co. *supra;* Dale v. Shaw Motor Co. *supra* (see concurring opinion of Mr. Justice Holt) ; Johnson v. Pillsbury Flour Mills Co. 203 Minn. 347, 281 N. W. 290, *supra*.

There are other distinctions also, some of which might be mentioned. The right to compensation under our workmen's compensation statutes is not based on negligence or fault as is the right to recover for wrongful death. Defenses available to a defendant in an action for wrongful death are not available to an employer in compensation cases. Next of kin under wrongful-death recoveries are not necessarily identical with dependents under workmen's compensation acts.[7] The right to compensation is determined by the industrial commission, while the right to recover for wrongful death must be litigated in court.

While both L. 1947, c. 616, and L. 1949, c. 558, contain identical provisions defining employees who may receive the benefits thereof, both are silent as to dependents who may receive compensation for the death of an employee. It is obvious that L. 1947, c. 616, § 4, and L. 1949, c. 558, § 6, have nothing to do with death benefits. Both are identical and read:

"**Persons now receiving benefit.** All employees of state tuberculosis sanatorium, under the provisions of Laws 1941, Chapter 479, as amended, who are now receiving benefits shall continue to receive such benefits, and in addition thereto, shall, beginning with May 1, 1947, be paid benefits as provided by this act."

L. 1949, c. 558, § 4 (M. S. A. 251.043), which was in effect at the date of death of the employee, as far as death benefits are concerned reads as follows:

"* * * If such employee dies leaving dependents as defined by the workmen's compensation law of the state, there shall be paid to such dependents the sum of $7,500.00, if tuberculosis was the authentic cause of death. Such compensation for death shall be paid to such dependents in installments of two-thirds of the employee's wage at intervals when the wage was payable, as nearly as may be. The Industrial Commission shall certify and supervise the payment of such compensation."

The words "such employee" should be construed to mean a person who was employed in a state, county, or municipal institution at

---

[7]See, Nyquist v. Batcher, 235 Minn. 491, 500, 51 N. W. (2d) 566, 572.

the time he contracted tuberculosis. Such dependents should not be held to be disqualified because the employee had been temporarily released from a sanatorium. The case should be viewed the same as if he had been continuously hospitalized from the time he first entered the sanatorium. His disease was never cured from that time on. It was simply temporarily arrested. The original award of the commission required the employer to furnish hospital and medical treatment from that date henceforth. Under that determination, had the employee made proper application, it would have been incumbent upon the employer to provide the necessary hospitalization. The fact that he did not do so should not be used to disqualify his dependents, if they would otherwise be entitled to compensation, any more than a settlement by the employee of his rights to benefits would have disqualified the dependents.

We are of the opinion that the law in existence at the time of the employee's death governed as to the rights of dependents and that the commission correctly allowed compensation to the dependents thereunder.

Reversed as to allowances for compensation accrued and medical and hospital benefits incurred prior to employee's death, and affirmed as to death benefits allowed employee's dependents.