MAXINE KALMES v. KAHLER CORPORATION AND OTHERS.

103 N. W. (2d) 203.

May 13, 1960—No. 37,780.

*Streiff & Price,* for relators.

*Hansen, Hazen & Lynch,* for respondent Kalmes.

*F. J. O'Brien* and *Thomas Wolf,* for respondents Rochester Methodist Hospital and Travelers Indemnity Company.

THOMAS GALLAGHER, JUSTICE.

Certiorari to review a decision of the Industrial Commission which sustained Maxine Kalmes' claim for workmen's compensation because of disability due to tuberculosis arising out of her employment by relator Kahler Corporation.

On September 10, 1950, employee commenced employment as a registered nurse in Colonial Hospital at Rochester, then owned by relator Kahler Corporation. On January 1, 1954, said relator sold the hospital to respondent Rochester Methodist Hospital. Thereafter employee continued in her employment at the hospital with the latter

corporation at intermittent intervals until November 14, 1956. A routine chest X-ray October 10, 1956, revealed lesions later diagnosed as tuberculosis.

During 1953 employee worked in endoscopy at the hospital. In that year 10 patients were treated for active tuberculosis, and the proof is conclusive that employee was exposed to this disease in her attendance upon these patients. There is no evidence that she attended patients afflicted with the disease or was otherwise exposed to it after January 1, 1954, when Rochester Methodist Hospital acquired Colonial Hospital. X-rays taken of her from time to time up to July 1955 were negative as to tuberculosis. On October 10, 1956, an X-ray revealed a lesion indicating tuberculosis. Because of the resulting disability, employee was hospitalized between December 1956 and June 1957 and was thereafter confined to her home. She was still disabled and under treatment at the time of the hearing.

A medical expert, testifying upon her behalf, expressed the opinion that she became infected with tubercle bacilli during 1953. He distinguished a primary infection from tubercle bacilli and tuberculosis, and he expressed the opinion that the infection of 1953 was the cause of the disease demonstrated on October 10, 1956; and that the lesion discovered on the latter date had developed at some time during the period subsequent to the X-rays taken in July 1955.

Each of the employers and their respective insurers contend that if there is any liability here it should rest upon the other; and in any event that employee is barred from any benefits under the Workmen's Compensation Act because the disease with which she is afflicted was not contracted within 12 months previous to the date of her disablement as required by M. S. A. 176.66, subd. 3.

In its opinion the Industrial Commission stated:

"Only one medical witness was called in the instant case. He was an expert in tuberculosis from the Mayo Clinic and it was his opinion that the cause of the employe's tuberculosis was most likely the exposure she had in 1953. It was his theory that the germs had been dormant and then flared and produced the clinically significant disease in 1956. As brought out in the doctor's testimony, 'exposure,' or 'origin of the

infection,' or 'primary infection' are not the same as the production or contraction of the clinical disease of tuberculosis. The employe's clinical disease was neither known until the latter part of 1956, nor did it manifest itself prior to that time. We do not see how she could be said to have 'contracted' the disease prior thereto. As indicated by Judge Learned Hand, *supra,* our compensation acts concern themselves with industrial disability, not mere infection. There is no payment for mere infection. Therefore, following the Gray case [Gray v. City of St. Paul, 250 Minn. 220, 84 N. W. (2d) 606], we hold the employe 'contracted' the occupational disease of tuberculosis within twelve months of her disablement and is entitled to benefits.

"All the parties are before us in this action. Therefore as the evidence clearly indicates that the origin of the disease was the exposure in 1953, while the employe was employed by the Kahler Corporation, and as the testimony did not show any exposure while the employe was employed at Rochester Methodist Hospital, we will assess liability where it legally belongs without further application of M. S. 176.66, Subd. 5."

■ Section 176.66, subd. 3, provides that:

"Neither the employee nor his dependents are entitled to compensation for disability or death resulting from occupational disease, unless such disease is due to the nature of his employment as defined in section 176.011, subdivision 15,[1] and *was contracted therein within*

---

[1]M. S. A. 176.011, subd. 15, provides in part: " 'Occupational disease' means a disease arising out of and in the course of employment peculiar to the occupation in which the employee is engaged and due to causes in excess of the hazards ordinary of employment * * *. Ordinary diseases of life to which the general public is equally exposed outside of employment are not compensable, except where such diseases follow as an incident of an occupational disease, or where the exposure peculiar to the occupation makes such disease an occupational disease hazard. A disease arises out of the employment only if there be a direct causal connection between the conditions under which the work is performed and if the occupational disease follows as a natural incident of the work as a result of the exposure occasioned by the nature of the employment. An employer is not liable for compensation for any occupational disease which cannot be traced to the

*12 months previous to the date of disablement*; \* \* \*." (Italics supplied.)

Under these statutes we are of the opinion that the evidence supports a finding that employee became disabled from tuberculosis due to the nature of her employment in November 1956; that she was first exposed to the disease in 1953; that the process of its contraction continued thereafter from such exposure; that it was first discovered by employee in October 1956; and that its contraction culminated by the impairment of her bodily functions and disability in November 1956. Since such disablement was within 12 months of the discovery of the disease in October 1956 and the culmination of its contraction by disablement in November 1956, it would follow that employee was not barred by the 12 months' limitation set forth in § 176.66, subd. 3.

■ Relator urges, however, that on the basis of Johnston v. State, 241 Minn. 72, 62 N. W. (2d) 347, and Peterson v. State, 234 Minn. 81, 47 N. W. (2d) 760, it must be held that the disease was first contracted by employee during 1953, the only year in which she was exposed to patients suffering from it during her employment at Colonial Hospital. It is true that in the cases cited, which did not involve construction of § 176.66, subd. 3, we held that contraction of tuberculosis occurred at the date of exposure to persons afflicted with the disease. We have given reconsideration to this theory. First it is to be noted that in decisions relating to the date of contraction of such diseases as coronary sclerosis, Kellerman v. City of St. Paul, 211 Minn. 351, 1 N. W. (2d) 378; pulmonary berylliosis, Corcoran v. P. G. Corcoran Co. Inc. 245 Minn. 258, 71 N. W. (2d) 787; and silicosis, Yaeger v. Delano Granite Works, 236 Minn. 128, 52 N. W. (2d) 116, we have adhered to a different theory. Therein we have adopted the viewpoint that the contraction of any of such diseases is a *process* which may extend over a lengthy period of time and of which the

---

employment as a direct and proximate cause and is not recognized as a hazard characteristic of and peculiar to the trade, occupation, process, or employment or which results from a hazard to which the workman would have been equally exposed outside of the employment."

employee may not become cognizant until it is first manifested by the impairment of employee's bodily functions.

Thus, in the Kellerman case we stated (211 Minn. 354, 1 N. W. [2d] 380):

"* * * In view of the nature of coronary sclerosis, the doubt as to the stage at which it should be characterized as a disease, and especially the negative results flowing from any other construction, we conclude, as did the commission, *that coronary sclerosis is 'contracted' within the meaning of the statute when it first manifests itself so as to interfere with bodily functions.*" (Italics supplied.)

Likewise, in the Corcoran case we held that (245 Minn. 266, 71 N. W. [2d] 793):

"* * * the statute in the case * * * does not commence to run until the victim has 'contracted' the disease, and the process of contracting the disease does not cease until physical impairment manifests itself. If the employee had no symptoms of pulmonary berylliosis until well within the one-year limitation, he is not barred by the limitation and he is entitled to recover whatever is due him under the provisions of the workmen's compensation act against the employer by whom he was employed when the disablement first manifested itself."

And in the Yaeger case it was said (236 Minn. 134, 52 N. W. [2d] 119):

"We are unable to see any distinction between coronary sclerosis and silicosis when applying the statutory limitation. In both cases, it is undisputed that it takes many more years than the statutory limitation for either disease to develop. In each case, the employe is capable of full performance of his duties until clinical symptoms appear. It might be said that the contracting of silicosis is not a matter of a moment or an occasion, but of a long period of time, and that the victim keeps on contracting during a long period of exposure until the breakdown, the clinical symptom, arrives. Silicosis is being continually contracted— a build-up to a break by accumulation. The statute does not commence to run until the victim has 'contracted' the disease, and the process of contracting does not cease until physical impairment manifests itself."

■ It can fairly be said that it is equally difficult to determine the exact date when it may be said that the disease of tuberculosis is contracted. It is recognized by medical authorities that exposure to the tubercle bacilli, or even primary infection therewith, may not be the same as actual contraction of the disease. This theory is well expressed in Smith v. State, 138 Conn. 620, 624, 88 A. (2d) 117, 119, (quoted in the commission's memorandum) where it was said:

"* * * most people have a tuberculous infection at some time in their lives, although such infection develops into tuberculous disease in comparatively few cases under modern sanitary conditions. * * *

"* * * The Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 U. S. C. § 901, bears little relation to the statute in the case at bar, but the remarks of Judge Learned Hand in a case [Grain Handling Co. v. Sweeney (2 Cir.) 102 F. (2d) 464, 466, certiorari denied, 308 U. S. 570, 60 S. Ct. 83, 84 L. ed. 478] brought thereunder are pertinent. * * * Judge Hand said: '* * * The statute is not concerned with pathology, but with industry disability; and a disease is no disease until it manifests itself. Few adults are not diseased, if by that one means only that the seeds of future troubles are not already planted; and it is a common place that health is a constant warfare between the body and its enemies; an infection mastered, though latent, is no longer a disease, industrially speaking, until the individual's resistance is again so far lowered that he succumbs.' "

■ In Gray v. City of St. Paul, 250 Minn. 220, 84 N. W. (2d) 606, we appear to have recognized this theory as applied to tuberculosis. There employee, a St. Paul police officer, as part of his duties on eight separate occasions during 1951 was required to ride in a police car with a fellow officer afflicted with tuberculosis. On February 19, 1954, the employee became disabled and was hospitalized for the disease. There we approved a finding of the Industrial Commission based upon medical testimony that employee's tuberculosis was the result of his association with his fellow officer during 1951, but that the actual contraction of the disease culminated in physical disability on February 19, 1954.

Based upon the viewpoint expressed in this case, and in line with the court's reasoning in Kellerman v. City of St. Paul, *supra*; Corcoran v. P. G. Corcoran Co. Inc. *supra*; and Yaeger v. Delano Granite Works, *supra*, we are of the opinion that, although employee was first exposed to tuberculosis during 1953, the process of its contraction continued thereafter until it culminated by the impairment of her bodily functions in October or November 1956. In arriving at this conclusion, we recognize its variance with that expressed in Johnston v. State, *supra*, and Peterson v. State, *supra*, and to the extent that they are inconsistent herewith they are overruled.

■ The problem remains as to which employer is responsible for the compensation due employee. The commission determined that relators, Kahler Corporation, for whom she worked when she was exposed to the disease, and its insurer, were solely responsible therefor. With this we agree. There is no evidence that employee was ever exposed to tuberculosis while working for respondent Rochester Methodist Hospital. However, under § 176.66, subd. 5, it is provided that "total compensation * * * is recoverable from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted." This would be Rochester Methodist Hospital, who last employed employee as a nurse in the employment to which her disease was due and in which it was contracted. But § 176.66, subd. 5, further provides:

"* * * If such disease was contracted while such employee was in the employment of a prior employer, the employer who is made liable for the total compensation, as provided by this subdivision may appeal to the commission for an apportionment of such compensation among the several employers who, since the contraction of such disease, employed such employee in the employment to the nature of which such disease was due. * * * the commission shall take into consideration in the apportionment of such liability not only the period of service of said employee with such employer, *but shall likewise consider the element of exposure to which the employee was subjected while in the service of such employer maintaining minimum standards,* * * *. If the commission find that *any* portion of such compensation is pay-

able by an employer prior to the employer who is made liable to the total compensation, * * * it shall make an award accordingly * * *." (Italics supplied.)

In accordance with the foregoing, the commission here placed full liability for compensation upon Kahler Corporation, in whose employment employee suffered her only exposure to tuberculosis, and its insurer. As stated in its opinion:

"All the parties are before us in this action. Therefore as the evidence clearly indicates that the origin of the disease was the exposure in 1953, while the employe was employed by the Kahler Corporation, and as the testimony did not show any exposure while the employe was employed at Rochester Methodist Hospital, we will assess liability where it legally belongs without further application of M. S. 176.66, Subd. 5."

It is true that § 176.66, subd. 5, provides for notice of time and place for hearing on determination of apportionment, but where all employers are before the commission, nothing further is to be gained by following the formalities of this requirement. To avoid multiplicity of actions and the additional expense involved, the commission made its determination as above set forth in the present proceeding. Under the circumstances presented, this procedure and the resulting determination must be approved. Employee is allowed $250 attorneys' fees.

Affirmed.

MR. JUSTICE LOEVINGER, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.