OLE BLOOMQUIST v. JOHNSON GROCERY AND ANOTHER.[1]

June 16, 1933.

No. 29,432.

*Bundlie & Kelley* and *Ernest Torinus,* for relators.

*R. E. Faricy, G. P. Mahoney,* and *John S. Morrison,* for respondent.

*HOLT, Justice.*

Certiorari to review a decision of the industrial commission awarding respondent compensation.

Respondent was in the employ of Roy Johnson, conducting a grocery store at the city of Virginia, this state, under the trade name of Johnson Grocery. On June 25, 1931, at about 11 o'clock in the forenoon, respondent placed a bunch of bananas in the front window, carried the crate to the back part of the store, then seated himself at a desk to make out bills. As he was doing this work a customer came in to buy a package of cigarets. Respondent rose from his seat, and as he turned to look a bug flew into his right eye. He testified:

[1]Reported in 249 N. W. 44.

"I excused myself for a minute and went back to the looking glass and opened my eye, and I could see the bug in the top of my eye. I took the bug out with my handkerchief, and the bug smashed, and I took out as much as I could."

He said it was a hard-shell bug. This is the only description we have of the bug. At noon his wife got out some part of the insect, and he seemed pretty fair and went back to work that afternoon and the next day. On Sunday he rested, but, the eye feeling sore, he consulted a doctor, and after a few days a specialist. Inflammation set in, and, besides treatment from doctors, respondent went to a hospital for five weeks.

It is conceded that respondent received an injury to his eye in the course of the employment. The only contention made by relators is that there is no evidence to sustain the finding that the employe suffered an accidental injury arising out of his employment. The evidence disclosed merely that the employment was in a grocery store and that when respondent arose to wait on a customer a bug flew into his eye; that bananas and cigarets were kept for sale. Nothing else appears except that the bug was some sort of a beetle, for it had a hard shell. There is no evidence that bugs of that description, or any kind of bugs, beetles, or insects, infested the store or that they are as abundant there as outside or in any other place. So there is no basis in the evidence for finding that this accident, if the contact between the bug and the eye may be called such, arose out of the employment. Unlike most workmen's compensation acts, we have the limitation that to be compensable the injury must be "caused by accident, arising out of" the employment. 1 Mason Minn. St. 1927, § 4269. As long as the legislature permits this limitation or restriction to remain in the workmen's compensation act the courts must apply it. The burden is upon the employe seeking compensation for an accidental injury to prove that it arose out of the employment. It is said the commission may infer from common or general knowledge that bugs and insects infest grocery stores. We do not think this to be true. It is rather common knowledge that during summer months people out in the open are

more exposed to contact with insects and various bugs than those working in houses or stores. For sanitary and other reasons, by means of screen doors and windows and other measures, all sorts of insects are excluded as far as possible from buildings.

In the cases hereinafter cited it will be noted that unless an employment was such that common knowledge recognized a risk as incident thereto the employe claiming compensation for an injury had to adduce evidence showing that the accident arose out of the employment. It is common knowledge that in a thunder-storm large trees attract lightning. With such knowledge and some expert testimony, it was held that the finding that the driver of an ice wagon, who, in the course of his duty, while passing under such a tree along an iron fence during a storm, was killed by lightning, met with an accident arising out of the employment, was sustained, the court saying:

"If the deceased was exposed to injury from lightning by reason of his employment, something more than the normal risk to which all are subject, if his employment necessarily accentuated the natural hazard from lightning, and the accident was natural to the employment, though unexpected or unusual, then the finding is sustained that the accident from lightning was one 'arising out of employment.' An injury, to come within the compensation act, need not be an anticipated one; nor, in general, need it be one peculiar to the particular employment in which he is engaged at the time." State ex rel. Peoples C. & I. Co. v. District Court, 129 Minn. 502, 503, 153 N. W. 119, L. R. A. 1916A, 344.

Undoubtedly there is common knowledge of risks arising out of certain employments. Thus it may be said that it is common knowledge that the conditions under which a bartender works are such that accidental injuries from flying missiles in saloon brawls arise from the employment. State ex rel. Anseth v. District Court, 134 Minn. 16, 158 N. W. 713, L. R. A. 1916F, 957. But to find that an accidental freezing injury arose out of the employment there must be evidence that the employe by reason of the employment was to an appreciable extent exposed more to the risk of freezing than the

generality of workers; or, in other words, there must be proof of a causal connection between the conditions under which the work had to be done and the accident. State ex rel. Nelson v. District Court, 138 Minn. 260, 164 N. W. 917, L. R. A. 1918F, 921; Dunnigan v. Clinton Falls Nursery Co. 155 Minn. 286, 193 N. W. 466; Moore v. J. A. McNulty Co. 171 Minn. 75, 213 N. W. 546. In Novack v. Montgomery Ward & Co. 158 Minn. 495, 198 N. W. 290, 292, it was said that an accident arises out of an employment "when it reasonably appears from all the facts and circumstances that there is a causal connection between the conditions which the employer puts about the employe and the resulting injury."

It must be said that the record in the instant case is absolutely barren as to the conditions under which respondent worked, especially so as to bugs and insects. And the facts and circumstances are only the very meager ones above enumerated. So the evidence furnished no basis for a finding that the accident—the bug flying into respondent's eye—arose out of the employment.

In Pearson v. Ford Motor Co. 186 Minn. 155, 242 N. W. 721, there was evidence of conditions under which the employe worked which furnished a basis for the finding that the heat stroke from which he died was an accident arising out of the employment. The latest of our cases involving this subject is Auman v. Breckenridge Tel. Co. 188 Minn. 256, 246 N. W. 889, where a stray bullet struck the employe while in the course of his employment upon the employer's premises, and the accidental injury was held not to have arisen out of the employment. As far as arising out of an employment, no other facts, circumstances, or conditions appearing, there does not seem to be much difference between a stray bullet fired by a thoughtless youth without intention to hit anyone and a stray bug propelling itself against the light of people's eyes. We deem the finding assailed to be without evidence to support it. Under workmen's compensation acts limiting compensable accidents to those arising out of the employment, other courts have reached the same conclusion as we do here. In Gooch v. Industrial Comm. 322 Ill. 586, 153 N. E. 624, an ice deliverer was struck in the eye by a

shot from a play device used by some child as he was passing on a street in his work. It was held this was not a street risk arising out of his employment.

The workmen's compensation act of Great Britain is the same as ours in the respect now considered. In the court of appeal in Craske v. Wigan, 2 B. W. C. C. 35, a lady's maid was working at an open window, through which a cockchafer flew at her face; to defend herself she quickly threw up her hand, which accidentally struck and permanently injured her eye. It was held that the injury did not arise out of the employment, Lord Cozens-Hardy saying [2 B. W. C. C. 39]:

"The incursion of a cockchafer through an open window into a room where there is a light is a risk common to all humanity, and it is altogether impossible to say that the fright caused by the incursion of the cockchafer followed by her putting her thumb into her eye was something which arose 'out of' her employment."

The same was the holding in Amys v. Barton, 105 L. T. R. 619, in regard to a workman's being stung by a wasp. Somewhat similar is Gooch's Case, 128 Me. 86, 145 A. 737, where an employe was bitten by a dog lying under a bench in the factory which she in the course of her employment was passing. The dog belonged to a fellow employe who had been warned to keep it away from the factory. It is held that the risk of being bitten by a dog did not arise out of the employment.

The award is set aside and the decision reversed.