NORA ROMANI v. ANCKER HOSPITAL AND ANOTHER.[1]

March 18, 1955.

No. 36,453.

[1]Reported in 69 N. W. (2d) 497.

*Marshall F. Hurley,* Corporation Counsel, and *Robert E. O'Connell,* Assistant Corporation Counsel, for relators.

*Doherty, Rumble & Butler* and *R. J. Leonard,* for respondent.

CHRISTIANSON, JUSTICE.

Certiorari to review a decision of the industrial commission affirming the referee's award of compensation to employee for temporary total disability resulting from tuberculosis pursuant to M. S. A. 251.041 to 251.045.

Nora Romani, hereinafter termed employee, has been employed as a registered nurse since her graduation from St. Francis School of Nursing at La Crosse, Wisconsin, on May 28, 1945. Part of her training at the school consisted of three months' work with patients afflicted with various contagious diseases including tuberculosis. Following graduation she was employed at St. Joseph's Hospital in St. Paul from January 1946 to February or March 1948. On June 4, 1948, employee commenced work at Bethesda Hospital in St. Paul. Her employment consisted of general duty nursing and delivery room work. To her knowledge she never administered to patients afflicted with tuberculosis at Bethesda and the hospital did not knowingly treat persons suffering from the disease. While at Bethesda, chest X rays and physical examinations[2] of employee negatived the presence of tuberculosis. In October 1949 she was given a Mantoux test which gave a negative indication of sensitivity to tubercular bacillus.[3]

On May 11, 1950, employee ceased work at Bethesda Hospital and on May 16 commenced employment with the Board of Public Welfare of St. Paul at Ancker Hospital,[4] the only tuberculosis sanatorium in

[2] The date of the first physical examination is not disclosed in the record but the second was on April 23, 1950, following a miscarriage by employee.

[3] Petitioner related that she read the test as positive but a staff doctor deemed it negative. The records at Bethesda Hospital include no reference to either a physical examination, chest X ray, or Mantoux test.

[4] Employee originally claimed compensation against Bethesda Hospital and its insurer, Employers Mutual Liability Insurance Company, but the

the city. Employee was not given a physical examination upon commencing work.[5] Her duties consisted of general nursing in Ward West 3 wherein surgical patients, eye, ear, nose, and throat patients, respiratory infection and urology patients, orthopedia patients, and gynecology patients were treated. Outside of her employment, to employee's knowledge, she did not contact anyone having tuberculosis, and neither her husband nor parents are or have been afflicted with the disease. However, in her work in Ward West 3 employee had contact with the persons, clothing, meal trays, and bed clothes of at least one patient who subsequently died of tuberculosis.[6] Also, she often worked in proximity to a kitchen aid who developed active tuberculosis in July 1950, and she was subject to possible contact with persons suffering from tuberculosis when she walked through the receiving room corridor while on the way to lunch or leaving work. Employee ate with other nurses who worked in the tuberculosis pavilion and receiving room, and she touched the librarian's cart and articles in the X-ray room which had been in contact with tuberculosis patients.

On June 14, 1950, a chest X ray of petitioner indicated the presence of a lesion on her lung, and on June 18 a larger X ray disclosed the lesion to be $1\frac{1}{2}$ inches in diameter and underlying the second anterior rib and second anterior interspace on the right side. Employee was admitted to Contagion Ward 4 for study to rule out tuberculosis on June 22, 1950, and on June 24, 1950, a gastric culture was inoculated which demonstrated that tubercular bacilli were present.

industrial commission, reversing an order of the referee, found that the statute of limitations barred her claim and ordered evidence taken regarding her rights against Ancker Hospital and the Board of Public Welfare of the city of St. Paul which led to the present litigation.

[5]The provisions of §§ 246.27 and 246.28 requiring physical examinations of certain applicants for state employment are not applicable to municipal institutions such as Ancker Hospital.

[6]Employee testified that she and the other nurses for this ward did not use an isolation technique involving the wearing of a gown and mask and special washing procedures when treating such patients.

Eventual surgical resection of the lesion was conducted and pathological sections thereof proved to be tubercular. In the uncontradicted medical opinion of the doctor who treated employee, the tuberculosis was present prior to her employment at Ancker Hospital on May 16, 1950, since development of a lesion ordinarily takes months after exposure to the disease.[7] However, the hospital records disclose that as of July 28, 1950, the radiologist at Ancker Hospital had not been convinced that tuberculosis was present and that, due to the position of the lesion and the absence of nodular change therein, it was his opinion that a slowly evolving pneumonia was a more likely cause of the lesion. Employee was confined at Ancker Hospital until January 19, 1952. She returned to work at the hospital on a part-time basis on September 16, 1952.

■  Section 251.041 provides that:

"Any sanatorium or institutional employee of the state or of any county or municipal subdivision of the state whose duties in any such institution operated by the state or any county or municipal subdivision bring him in contact with patients or inmates therein who are afflicted with tuberculosis, which, if he contracts tuberculosis, shall be entitled to the medical care and compensation provided by sections 251.041 to 251.045. 'Contracts tuberculosis' shall be construed to mean the development of demonstrable lesions of tuberculosis or the demonstration of the germs of tuberculosis in that person's secretions or excretions."

In addition to the restricted definition of "contracts" in the foregoing section, § 251.043 conditions the award of relief upon a finding by the industrial commission from the evidence:

"* * * that such employee is suffering from tuberculosis contracted in the institution *by contact* with inmates or patients therein

---

[7]The doctor, who was called by the employer and gave the only expert medical testimony in the case, testified that there is no usual incubation period for tuberculosis but that a Mantoux test shows sensitivity between three and six weeks after exposure and that X-ray findings may take months before appearance.

or *by contact* with tuberculous contaminated material therein, * * *." (Italics supplied.)

Thus under the statutory scheme it appears that the employee must show not only that he had contact with persons afflicted with tuberculosis or with tuberculous-contaminated material,[8] but further, as is the case in the ordinary workmen's compensation recovery,[9] that his contracting of the disease was causally related to such contact or employment.[10]

As applied to the instant case, §§ 251.041 and 251.043 require that employee show that contact with afflicted patients or contaminated material in Ancker Hospital led to the development of the lesion found on her lung in the X rays on June 14 and 18, 1950, and the positive showing of the gastric culture on June 24. In its decision the industrial commission apparently misconstrued the applicable statutes as not requiring a causal connection between the contact with persons afflicted with tuberculosis or contaminated material and the contraction of tuberculosis since the opinion filed by the commission states:

"To establish a claim under this Section, the evidence must show contact 'with patients or inmates therein who are afflicted with tuberculosis, which, if he contracts tuberculosis, shall be entitled to the medical care and compensation provided by sections 251.041 and 251.045.'"

Under the present record there is ample evidence to support a finding that employee was in contact with persons afflicted with tuber-

---

[8]Peterson v. State (Operating University Hospitals), 234 Minn. 81, 85, 47 N. W. (2d) 760, 762.

[9]Sections 251.041 to 251.045 have been construed as supplementary to, and to that extent a part of, the workmen's compensation law of this state. Kaljuste v. Hennepin County Sanatorium Comm. 240 Minn. 407, 61 N. W. (2d) 757. Section 176.021, subd. 1, provides workmen's compensation coverage only where the injury or death is shown to have arisen "out of * * * employment." Bloomquist v. Johnson Grocery, 189 Minn. 285, 249 N. W. 44.

[10]See, Johnston v. State, 241 Minn. 72, 75, 62 N. W. (2d) 347, 349.

culosis and with contaminated material at Ancker Hospital. But beyond the permissible inference attributable to evidence of such contact standing alone,[11] no evidence has been introduced by employee to show that contact at Ancker Hospital caused her to contract the disease. In fact, the opinion of employee's doctor, which was the only direct testimony regarding causation, not only negatives any such inference but is directly contrary to the proposition that the demonstrated contacts at Ancker Hospital were the source of her tuberculous infection.

■ On the basis of the evidence presented at the hearing, if employee's case is an "ordinary case" such as that upon which the doctor based his opinion, she could not have developed the lesion on her lung by exposure to tuberculosis between May 16 and June 14, 1950, while employed at Ancker Hospital, and hence she would not be entitled to compensation under §§ 251.041 and 251.043. However, we do not deem the testimony of employee's doctor to be conclusive since it is not definitely established that this was an "ordinary case." Other possible causes for the contraction of tuberculosis, such as activation of a lesion previously caused, as suggested by the radiologist's report by a slowly evolving pneumonia, do not appear to have been conclusively ruled out. On the other hand, the present record does not support an affirmative finding that Ancker Hospital was the source of petitioner's tuberculous infection. In view of the industrial commission's apparent misapprehension as to this requirement of the statute and the lack of conclusive evidence against employee

[11]In Peterson v. State (Operating University Hospitals), *supra*, we held that evidence of *mere* contact with patients afflicted with tuberculosis does not compel an award of compensation. There we affirmed the industrial commission's disallowance of the petitioner's claim as an employee at the University Hospitals where (234 Minn. 86, 47 N. W. [2d] 762) "The extent of her contact with these patients and whether or not they were in the contagious state was left to speculation."

thereon,[12] it is necessary in the interests of justice to remand the case to the commission for rehearing.[13]

The matter is remanded to the commission for rehearing and decision in accordance with this opinion.

Reversed and remanded.

[12]Section 251.044 provides: "Laws 1949, Chapter 558, shall not be construed to apply in the case of employees known to have had tuberculosis as demonstrated by tuberculous lesions of the adult type or by demonstration of the germs of tuberculosis in such employee's secretions or excretions previous to or at the time of employment in said institutions. Laws 1949, Chapter 558, shall apply in the case of employees known to have only an allergic reaction to tuberculin or only evidence of a healed primary infection if they contract tuberculosis while employed in said institutions."

[13]Cf. Kaplan v. Alpha Epsilon Phi Sorority, 230 Minn. 547, 42 N. W. (2d) 342; Klika v. Independent School Dist. No. 79, 161 Minn. 461, 202 N. W. 30.